# The Lackawanna and Bloomsburg Railroad Company *versus* Chenewith.

1. At the request of the owner of a freight car, the agents of a railroad company attached his car to a passenger train contrary to the "instructions and rules" of the company; he agreeing "to run all risks." *Held*, that the company could not repudiate the act of their agents so as to free themselves from responsibility for negligence.

2. The car was not unlawfully on the road, and the owner was entitled to compensation for injury from negligence to which the attaching his car did not contribute.

3. The owner assumed only the risk of the act of attaching his car; not the risk of the negligence of the company's agents.

4. The owner agreed also to attend to the brakes on his car; this did not constitute him a person in the employment of the company, so as to prevent him from bringing suit against the company for damages for negligence.

5. Cattle being on a railroad at the time of an accident raises a question of negligence, and whether it is imputable to the company is determinable only by the jury.

6. If from the language of a judge, either through ambiguity or want of perspicuity, there is good reason to believe that the jury have been misled, the Supreme Court will reverse.

ERROR to the Court of Common Pleas of *Luzerne county*.

This was an action on the case, commenced May 4th 1864, by William L. Chenewith against the Lackawanna and Bloomsburg Railroad Company.

The plaintiff resided in Carlisle, and was engaged in running a market car, and selling marketing, fruit, &c. On Saturday, about the 1st of October 1860, he and John Harder were at Kingston with their cars (Chenewith's loaded with apples), after the regular freight train had gone. The superintendent of the road was absent. Upon the request of Chenewith—after being told it was against instructions and the rules of the company, and he proposing that if his car was put on the passenger train, which had not then arrived, he would run all risks, and attend to the brakes on his car—some of the other agents agreed that he might attach to that train. Both cars were attached, Harder's to the passenger car, and Chenewith's to Harder's, and after the train had passed Berwick station, a cow was seen coming down a hill on the side of the track; the engineer whistled to put down brakes, but before the train could be stopped, the engine ran over her. Before the train had reached Berwick, Chenewith went into Harder's car, and when the engineer whistled to put down brakes, Chenewith was on the platform of the passenger car. He then got on to Harder's car, which was "riding the sills," and Chenewith fell off. Harder's car body fell over into the canal; Chenewith's car also went into the canal. He was found lying between the two cars, in the canal, severely injured. He also lost a large portion of his lading. There was evidence that on one side of the track, at the place of the disaster, was a high bank, with a

fence at the top, except at the terminus of a street; on the other side was the canal, and at Berwick a cattle-guard; there was a comparatively slight curve there in the road. There was a watchman also employed on that part of the track.

On the trial no points were submitted. Conyngham, P. J., after referring to the permission to attach the cars, charged the jury, amongst other things—

1. "In this respect both parties were acting wrongfully, if the testimony be correct, and if, as they said, they thought the effect of it might endanger the passenger train and the passengers, it was grossly wrong on the part of the officers. I do not see, however, that the company can here repudiate the acts of their officers, so as to free themselves from all liability upon such ground, as the officers did attach the cars, and run them on their course up to the time of the difficulty.

2. "I do not consider that the agreement to stand or bear all risks would free the company from responsibility if injury occurred to the plaintiff, by reason of negligence or want of ordinary care in the running of the train by the agents of the company, the jury not finding any other concurrent negligence on the part of the plaintiff, except the permitting his cars to be attached to the train under the contract mentioned.

3. "I do not consider, under the evidence, that the plaintiff was technically a passenger on that train, or that because he agreed as is said by some of the defendant's witnesses, to brake his own car, he is to be considered an *employee* of the company, so that he cannot bring suit against them for damages under the circumstances claimed here.     *     *     *     I am not ready to say that such a person is, by virtue of his employment in such capacity, without any obligation upon the part of the company to protect him against the negligence of her engineers or other officers.

4. "It is for you, upon reviewing all the facts, to decide whether the *accident* was occasioned by the carelessness or negligence of the engineer upon the train, or the watchman upon the road, another officer of the company, by leading the engineer into the danger, through the putting up of his signal-light of safety, when a proper examination might have enabled him to discover this cow upon the track, if she had been there any time.

5. "When the trouble about the cow occurred, Mr. Harder says the plaintiff was on the back platform of the passenger car, from which he was suddenly thrown or fell off; he was not in his proper place; while the mere fact of his being upon a platform (a platform outside of the car being necessarily his proper location) would not rule the case against him, yet if by reason of his not being on his own car handling or ready to handle the brake, which if done in due season, or for any other reason, you

[Lackawanna and Bloomsburg Railroad Co. v. Chenewith.]

believe as argued here, would have lessened the chance of injury from the striking of the cow by the car, and as to any claim for personal damage or injury to his person, if by his unauthorized change of place, as contended, he conduced to the danger of the injury which the jury think, under the evidence, he might have escaped if he had been in his allotted situation, he must and should be considered as guilty himself of carelessness and negligence conducive to the accident or injury.''

The jury found for plaintiff $3000. The portions of the charge above-mentioned were assigned for error.

*S. Woodward* and *H. M. Hoyt*, for plaintiffs in error, cited Reeves *v.* Del., Lack. and West. Railroad, 6 Casey 460 ; Railroad *v.* Norton, 12 Harris 470 ; Wells *v.* N. Y. Central Railroad, 26 Barb. 341 ; Redfield on Railways 328 ; Penna. Railroad Co. *v.* Zebe, 9 Casey 318 ; Railroad *v.* Aspell, 11 Harris 147 ; Cumberland Valley Railroad Co. *v.* Myers, decided at Harrisburg, June 1864, not reported ; Ryan *v.* Cumberland Valley Railroad Co., 11 Harris 387 ; 5 Exch. 351 ; 10 Cush. 228 ; 1 Seld. 492 ; Wild *v.* Hudson River Railroad, 2 Am. Law Reg. 91 ; Railroad Co. *v.* McCloskey, 11 Harris 526 ; McCully *v.* Clarke, 4 Wright 406.

*A. Ricketts* and *C. P. Humrich*, for defendant in error, cited Pittsburgh *v.* Grier, 10 Harris 54 ; 5 Rawle 189 ; 9 Watts 88, 89 ; 6 W. & S. 500 ; 4 Harris 77 ; 6 Casey 242 ; 8 Id. 414 ; Doctor and Student 224 ; 7 Harris 346 ; 6 Casey 454 ; Amer. Railroad Cases 128–9, and in note ; Coggs *v.* Bernard, Ld. Raymond 909 ; Forward *v.* Pittard, 1 T. R. 27 ; 1 Amer. Railroad Cases 109 ; Coke upon Littleton 89 a, and notes 76 and 77 ; Penna. Railroad *v.* McClosky, 11 Harris 526 ; Schroyer *v.* Lynch, 8 Watts 458 ; Quarman *v.* Burnett, 6 M. & W. 499 ; Rapson *v.* Cubitt, 9 Id. 710 ; Brown *v.* Lynn, 7 Casey 510 ; 8 Ohio (N. S.) 570 ; 26 Conn. Rep. 591 ; 27 Id. 393 ; Davies *v.* Mann, 10 M. & W. 546 ; Illidge *v.* Goodwin, 5 C. & P. 190 ; 24 Verm. Rep. 487 ; 27 Conn. Rep. 393 ; 16 Id. 421 ; Redfield on Railways, sect. 151, and cases cited ; Railroad Co. *v.* Aspell, 11 Harris 150 ; Stokes *v.* Saltonstall, 13 Peters 181 ; McCully *v.* Clarke, 4 Wright 400.

The opinion of the court was delivered, October 18th 1866, by

THOMPSON, J.—1. The first assignment of error on the record is to the portion of the charge of the learned judge, in which he holds that the agents of the company, as well as the plaintiffs, acted improperly in attaching freight cars to a passenger train, yet that the company could not repudiate the act so as to free

[Lackawanna and Bloomsburg Railroad Co. v. Chenewith.]

itself from responsibility for negligence, on the grounds of want of power in their agent.

We think the court committed no error in this. The arrangement was made with parties having full power over the subject-matter, and to them the plaintiff was authorized to look, and was required to look to no other. When therefore they consented to hitch on his cars to the passenger train, even at his urgent solicitation—and we have not a particle of evidence that other inducements to do the act were held out, excepting freedom from responsibility as a consequence of the attachment—we must presume that it was done with a view to the compensation to be paid, on the one hand, and the usual care to be exercised on the other. The argument, however, is that the plaintiff was guilty of such a wrong in asking for and permitting his car to be attached, that whether the act contributed to the disaster or not, he is to be treated as a trespasser, and not entitled to any compensation for injuries not wilfully done him. This we think is not the law, unless in a case where the will of the agent is controlled and subverted by improper influences, he is induced to do that which is manifestly beyond the scope of his powers. That there was a regulation against running freight cars with passenger trains, may be admitted, although it was not properly proved; yet that neither proved that it might not be safely done, nor that if the company undertook to do it, they might lay aside the duty of care and commit such cases to the guardianship of chance. See Powell v. The Penna. Railroad Co., 8 Casey 414. The great overstatement of the efforts made to induce the defendants to take the plaintiff's cars, is the main pillar upon which the argument against this portion of the charge is constructed. Fairly stated, the facts were that the plaintiff and another were desirous to get to Carlisle by a certain day, and urged to be taken on the train by the company, as they had missed connecting with the freight train. The conductor and freight agent considered of the matter; inquired into the capacity of the cars to run with passenger cars; made up their minds to take them on their train, on a promise not to be held answerable for any injury resulting from the arrangement. Was the plaintiff put outside the protection of the law because he trusted to their judgment to do an act within their power to do, and especially when the act itself is not at all implicated in the disaster? The Railroad v. Norton, 12 Harris 470, gives no support to such a doctrine. It was well decided on its own facts, and in substance presented the case of an authority given, or claimed to have been given, to obstruct or imminently endanger by an obstruction of the track. No sane man could suppose the agent of a railroad company had power to give any such authority, and hence a reliance upon it was an act of folly which the law would not compensate. It was palpable to the "outward sense"

2 P. F. Smith—25

that such obstruction was unlawful. Not so in this case. The regulations which controlled among the operators of the company were against it, but regulations for convenience may be, and oftentimes are suspended or modified, in obedience to certain exigencies, by those in charge of the operations. When this is done and no evil results, no harm is done. When the contrary is the case, the only rule to apply is to give full effect to the consequences flowing from the act, and no more. Here it is not pretended that these freight-cars, the plaintiff's and Harder's, were the cause of running over the cow in the road, and it cannot be denied that that was the immediate or proximate cause of the injury. In all cases like this, the maxim "*proxima causa non remota spectatur*" rules, and it must rule here, unless the unlawfulness of the plaintiff's car and himself on the road be established. We think this cannot be asserted by the company under the facts they have given in evidence, and we think there was no error in this part of the charge.

It has been suggested that if the car had not been attached the plaintiff would not have been injured. Doubtless this is true, and it is true of every injury. In all cases if the party injured had been absent it is presumable he would not have been injured by the agency operating. The voluntary presence of the traveller, if not wrongful, is so much a matter of individual choice that its propriety is never an element to be inquired into in claiming or resisting damages for injury. People have a right to travel when they please, and will be compensated for injuries if occasioned by the negligence of those engaged in transporting them, if they have not contributed to the immediate disaster by their own negligence, whatever might be said against the propriety of their journeying. It is no answer to the plaintiff's claim, therefore, to argue that if he had not had his cars attached and been present, he would not have been injured. This was manifestly not the *proximate cause* of the injury, and not to be considered unless it can be shown that he was a trespasser in being on the train at the time. This he was not; for he was there by permission and under the contract of parties competent to give him authority to be there. His right to damages, therefore, could only be rested upon an inquiry into the question of whose was the immediate, not the remote cause of the injury. In noticing another assignment of error we will be brought directly to inquire whether the case was properly dealt with on this ground, and will not further discuss the point here. So far we discover no error in the charge.

2. Nor do we think the 2d assignment has been sustained. The fair interpretation of the agreement of the plaintiff is, that if the agent of the defendant attached his car to the passenger train he was to assume all the risk of that act; he did not assume the risk of negligence on their part, nor could they contract for

exemption on account of it: Powel v. Pennsylvania Railroad Co., 8 Casey 414. The position taken by the learned judge and noticed above, having placed the case before the jury on its true grounds in our opinion, namely, on the point of negligence, and not of authority in the agents to engage to transport the plaintiff and his cars, his remark that the plaintiff was entitled to a verdict if the defendant's negligence was the sole cause of the disaster, was entirely proper. Why speculate about the supposed dangerous position assumed by the plaintiff if no damage resulted from it? Was he to become an outlaw for assuming what proved to be no risk, and so to forfeit his right when he was blameless? I know of no law to justify such a position.

3. In Lockhart et al. v. Lichtenthaler, 10 Wright 151, we held that a person in charge of a private car, and acting on it as brakesman, was not a servant of the company so as to preclude his widow from recovering for the loss of his life by the negligence of the servants of the road. Strictly a passenger he was not, nor was he a servant of the company, neither earning wages from it nor bound to obey its orders, excepting in regard to the property especially in his charge. We held him entitled to the rights of a passenger, so far as injury to him was concerned, and that case rules the present in this particular; nothing more is needed on this point to show that there was no error in this portion of the charge.

4. To the portion of the charge embraced in the 4th assignment of error, the objection seems to be that it referred the question of negligence alleged against the company to the jury without evidence. There was no error in this reference of the question to the jury, unless, indeed, there was not sufficient evidence of negligence to go to the jury. But there was evidence on this point, unless the passenger was bound to take the risk of cattle on the track, and the company were not. Although a railroad may not be bound to fence its track against trespassing cattle, it is well settled that as between it and its passengers, it must take the risk of injury to them from such cause; and it is no answer to a claim for injury for such a cause, that the defendant was not bound to fence, or that cattle were on their track trespassing without their agency or knowledge. Their being there at the time of an accident, always raises a question of negligence or care; and whether negligence is imputable to the company, or whether they have exercised due care to guard against obstruction from such cause, is always and only determinable by the jury.

In this case there was an omission to fence at the mouth or end of a particular street. Near that was a watchman's station. It was a pertinent inquiry, therefore, whether there was negligence in the company in not fencing at the point mentioned, or whether the fault lay with the watchman—or either. If it lay with one or both,

[Lackawanna and Bloomsburg Railroad Co. *v.* Chenewith.]

the plaintiff's case was clearly made out without his agency in it. And of this the jury had been instructed to inquire, in a previous part of the charge. These facts most certainly committed the case to the jury, and in submitting them the court committed no error.

5. As we understand the learned judge, he charged that the fact that the plaintiff, at the moment the accident occurred, was on the rear platform of the last passenger car, did not necessarily carry the case against him; and he gave his views of the law on this point thus: " Yet, if by reason of his not being on his own car, and handling or ready to handle his brake, which if done in due season; or for any other reason, you believe, as argued here, would have lessened the chance of injury from striking the cow by the cars; and as to any claim for personal damage or injury to his person, if by the unauthorized change of place, as contended, he conduced to the danger, or the injury, which the jury think under the evidence he might have escaped if he had been in his allotted situation, he must and should be considered as guilty himself of carelessness and negligence conducive to the accident or injury."

The complaint that the charge lacks perspicuity and is ambiguous, is to some extent just. But the defendant should have provided against this, by asking for instruction better suited to the case. If the counsel chose to withdraw their points, they assumed the very risk of which they complain. This perhaps, is enough to say about the complaint of mere ambiguity. If the judge had said nothing in respect to the matter here involved, in the absence of any request to charge in a particular way, we would not reverse, as we have often said. By failing to pray instructions, we must infer that the party thought it best to risk what might be left unsaid, rather than call for special instructions. If he is injured by omitting to do so, it is his own error, which we do not sit to correct. But if from the language used by the judge, either on account of ambiguity or want of perspicuity, there is good reason to believe the jury have been misled as to the case, we ought to reverse. Error from such a source is not less pernicious than positive error from any other. The jury are entitled to reasonably clear and comprehensive instructions, whenever any ought to be given, and when they fall so far short of this as to induce a well-grounded belief of misapprehension on part of the jury, this is generally sufficient to call for a reversal.

But the instructions embraced in this assignment of error, though involved, were such, we think, as could be well understood by the jury. We have no good reason to suppose they were not. They assert that the plaintiff at the time of the accident was not in his proper place, and the fact was left to the jury to say whether this circumstance increased the danger of contact by the train with the

[Lackawanna and Bloomsburg Railroad Co. *v.* Chenewith.]

cow, by the omission of the plaintiff to handle his brake ; and whether his own injury was the result of his unauthorized change of position or conduced to produce it, with a sufficiently clear direction, that, if these facts were affirmatively found, the negligence was established against the plaintiff, and he would not be entitled to recover. This we think the jury could not fail to understand to be the meaning of the charge. If so, was it right in principle ?

It is true, as argued for the plaintiff in error, that all the risk of an unauthorized change of position by the plaintiff on the train was assumed by him, and he was bound to abide it. If it conduced to produce the injury, although the defendant may have been guilty of negligence at the same time, it would deprive him of all right to compensation, the fault being partly at. least his own. But if it had no immediate connection whatever with the agency producing the injury, it would be strange justice to impute to it the like effect as if it had. That must necessarily be the conclusion in every case, if the question be not for the jury to say whether the acts of the plaintiff at the time have or have not been such as to have conduced to the injury. This is the rule, undoubtedly, in relation to passengers carried by rail, and was what the learned judge referred to the jury in the instruction complained of. If this was a proper inquiry for the jury, no error was committed in referring it to them. That this was the meaning we readily discover from his language, and I know of no rule by which we are bound to presume the jury did not understand it, and were misled by it. The result of their verdict under the testimony falls far short of establishing this. The plaintiff in error avers in his pleadings in this court, that there is error here, and he is bound to prove it. We must have more than suspicion of error upon which to base our action. If language has a meaning comprehensible by us, we ought, it being untechnical, to presume it was comprehended in the same way by the jury, until the contrary be made to appear. That has not been-done in the argument on this point.

The question whether the injury to the plaintiff resulted in any degree from his own acts or omissions, we think was plainly enough referred to the jury, with a sufficiently decided expression that if it were, he was not entitled to recover damages from the company ; that if his negligence or misconduct contributed to his own injury, he must blame himself. This was in substance of the instruction, and there was nothing in it of which the defendant can complain.

The counsel for the plaintiff in error seems to confound the duty resting on a passenger with the law of contract, wherein, if the party do not comply, he is not entitled to the stipulated compensation. This is not correct to the full extent. Strictly, a passenger is only entitled to enjoy the seat he pays for. But if

[Lackawanna and Bloomsburg Railroad Co. *v.* Chenewith.]

he be injured while passing about in the car or standing up, without such acts contribute to the injury, he will be entitled to be compensated if it resulted from the negligence of the carriers, although he was out of his seat. If a passenger puts himself out of place, and in a place of danger, and is injured as the result, this is *damnum absque injuriâ,* and he cannot recover. This results rather from the law of carriers than from a breach of contract. If the contract were to control exclusively, then any breach would defeat the injured party without regard to the effect of contributory acts. The duty to avoid risks or unauthorized acts, I admit, grows out of the contract relation between the carrier and passenger so far as to prevent a recovery on account of them; but not so far as to prevent a recovery where the fault is with the carrier, and the breach of duty arising out of the contract has not contributed to the injury. If no harm accrues from the breach of the duty, no blame or loss ought to follow. If the plaintiff did not contribute to his own injury by being where he was instead of where he had agreed to be at the moment of the accident, this would prove that the accident was entirely independent of his agency. This was for the jury to ascertain from the evidence, and so it was submitted to them, and they have found the point in favour of the plaintiff and allowed damages. It may be they might with better justice have come to a different conclusion. But if so, which we do not assert, we cannot correct it. It is only with cases of clear error this court can properly interfere with the verdict, the jury being constitutional triers within their sphere as truly as the court.

These views do not, at least they are not intended to, impinge on the principles of the cases of The Railroad Co. *v.* McCloskey, 11 Harris 526, McCully *v.* Clarke & Thaw, 4 Wright 406, nor The Railroad Co. *v.* Aspell, 11 Harris 149; indeed we accord fully with them so far as these principles are applicable to the circumstances of each case. The *cause* of the injury here was in no way attributable to the plaintiff; but still it was a question whether his acts or position at the moment of the accident contributed to his own injury. That was a question for the jury, and we see no error in the charge in submitting it to them.

Judgment affirmed.