J. Mosher & Co., plaintiffs in error, *vs.* The Southern Express Company, defendant in error.

When the agent of the Southern Express Company at Augusta receipted for a package of goods to the shipper, marked "C. A. Robinson, Cartersville, Ga," and in the printed receipt given by the agent of the company to the shipper, the following words were inserted: "which it is mutually agreed is to be forwarded to our agency nearest or most convenient to destination only, and there delivered to other parties, to complete the transportation:"

*Held*, that in case of the loss of the goods, the company was liable therefor, and could not protect itself from its legal liability by shewing that its line of transportation extended only to the city of Atlanta, especially when the evidence in the record shews that fact was *not known* to the shipper, or communicated to him, at the time of receiving the goods, by the agent of the company. Harris, J., dissenting.

*Held*, also, that the evidence in the record, shewing that the goods were seized by legal process, without more, was not sufficient to exonerate the company from its legal liability as a common carrier.

Case.    Motion for new trial.    Decided by Judge Snead. City Court of Augusta.    February Term, 1867.

Mosher & Co., through a son of Mosher, delivered to the Southern Express Company, at Augusta, Georgia, two bales of yarns, and took therefor a receipt, in these words:

"Southern Express Company,
*Augusta, Sept. 4th,* 1865.

Received of *J. Mosher & Co. two bales yarns*, valued at *three hundred* dollars, and for which amount the charges are made by said company, marked *C. A. Robinson, Cartersville, Ga.*, which it is mutually agreed is to be forwarded to our agency nearest and most convenient to destination only, and there delivered to other parties to complete the transportation.    *    *    *    *    *    *    Nor shall the said company be held responsible for the safety of said property after its arrival at its place of destination."    *    *    *    *    *    *    *    *    *    *

The parts of the receipt omitted in nowise relate to the questions made in this case. It was signed by an agent for the company. The freight was not paid, but was to be collected on delivery.

These goods were not delivered, and an action on the case was brought against the company, as a common carrier, for their value. The agent afterwards informed Mosher that the goods had been taken by legal process, and advised him to replevy them. Mosher believed this statement, because the agent was a truthful man, but did not act upon the advice, because he thought the company was liable to him for the value of the goods. Mosher, plaintiff, did not know that the defendant's line of transportion did not go beyond Atlanta. Upon the facts and proof that the goods were worth $300 00, the plaintiffs closed.

The defence was, that the defendant, at its terminus, delivered the goods to the Adams' Express Company, and also that they were seized by legal process. The defendant shewed, by Dempsey, that he was defendant's assistant superintendent; that when informed that the goods did not reach Louisville, to which place they were subsequently directed to be forwarded, he wrote to the company's agent at Cartersville, and was informed that they had been taken by legal process; he told Mosher of this, and advised him to replevy them, which Mosher refused to do; he asked Mosher to authorize the company to bring suit for them in his name; this he also refused to do, saying the company was liable to him for the goods; that, at the time of the receipt of the goods, the defendant's line terminated at Atlanta, short of Cartersville, and Cartersville was on the line of the Adams' Express Company, and the agent at Cartersville was the agent of the last-named company, and not of defendant, though defendant did, after these goods were lost, extend their line beyond Cartersville, and employed said Adams' agent as their agent; and that nothing was said, at the time the goods were received, about the defendant's line stopping short of Cartersville. No date is given to said conversations, etc., nor does anything appear explanatory of the alleged legal seizure, except as aforesaid,

Mosher & Co., *vs.* The Southern Express Company.

and as contained in the following letter, which was read in evidence, by the plaintiff, in rebuttal:

> " SOUTHERN EXPRESS COMPANY,
> " (Express Forwarders,)
> " Augusta, Ga., Jan. 2d, 1866.

" *Agent Southern Express Company, Cartersville, Ga.* :

" Dear Sir—Enclosed please find a letter from A. M. Franklin, Esq., sheriff of Bartow county, in reference to the two bales of yarns shipped by express to Charles A. Robinson, Cartersville, Georgia. You will see by the letter that the sheriff was acting under orders from Lewistine & Pfifer, of Cartersville. The sheriff is not to blame in the case, but we will look to L. & P. for the money received for the two bales, and if they refuse to pay you the money, please let me know. You will see them for Mr. Mosher, shipper. Please answer soon.

> " Truly yours,
> " H. DEMPSEY, Assistant Superintendent."

This being all the evidence, the Court charged the jury that the receipt shown in evidence limited the duties of defendant, in transporting the goods sued for, to the end of their own line, and if they were there delivered for further transportion, the duties of defendant were at an end; and further, that if the goods were taken from the custody of the carrier by legal process, the plaintiff could not recover.

The verdict was for plaintiff, for $300 00, with interest and costs. A new trial was moved for, by the company, upon the grounds that the verdict was contrary to the evidence, the charge of the Court and the law. The Court granted the new trial, and this is assigned as error.

HOOK & CARR, for plaintiffs in error.

WM. T. GOULD, for defendant in error.

WARNER, C. J.

This was an action brought by the plaintiffs against the defendant as a common carrier, for the loss of goods received by him for transportation from Augusta to Cartersville. On the trial of the case in the Court below, the jury found a verdict for the plaintiffs. The Court granted a new trial, which is now assigned for error here. The receipt given by the

agent of the Company on the 4th of September, 1865, is in the following words: "Received of J. Mosher & Co., two bales yarns, valued at three hundred dollars, and for which amount charges are made by said company, marked C. A. Robinson, Cartersville, Ga." There is also printed on the face of the receipt amongst other things, the following words, "which it is mutually agreed is to be forwarded to our agency nearest or most convenient to destination only, and there delivered to other parties, to complete the transportation." It is insisted for the defendant that his line of transportation extended only to the city of Atlanta, and that inasmuch as the goods were lost beyond the terminus of his line, that he was not legally liable for the loss of the goods, and that such was his *special* contract as expressed in the receipt given for the goods. Two questions arise here: First, was the defendant liable under the law as a common carrier, to transport the goods received by him to Cartersville, the place of destination? Second, if he was so liable as a common carrier, could he *limit his legal liability* by the statement made on the face of the receipt given for the goods? As to the legal liability of the defendant as a common carrier, for the loss of goods received by him to be transported beyond the terminus of his own line, the American authorities are conflicting. But the rule is well settled in England, that he is liable, and this rule as to his liability, in the language of Baron Rolfe, in Muschamp vs. Lancaster Railway Company (4th Meeson & Welsby's Rep. 424,) is not only consistent with law, but is the only one consistent with common sense, and the convenience of mankind." In the case above cited, a parcel was delivered at Lancaster, to the Lancaster and Preston Junction Railway Company, directed to a person at a place in Derbyshire. The person who brought it to the station, offered to pay the carriage, but the book-keeper said it had better be paid by the person to whom it was directed, on the receipt of it. The Lancaster and Preston Junction Railway Company were *known* to be proprietors of the line, *only so far as Preston*, where the railway unites with the North Union line, and that afterwards with another, and so on into Derbyshire. The

Mosher & Co., *vs.* The Southern Express Company.

parcel having been lost *after* it was forwarded from Preston, it was held that the Lancaster and Preston Railway Company *were liable for its loss.* See Angel on the law of carriers, 100, section 95. Weed vs. Schenectady and Saratoga Railroad, 19th Wendell's Rep., 539. In the case now before us, the shipper of the goods did *not know* that the defendant's line of transportation did not extend beyond Atlanta, and nothing was said at the time the goods were received, about the defendant's line stopping short of Cartersville, the place to which the goods were received by the defendant to be forwarded. The freight, too, was to be paid at Cartersville. In our judgment, the only safe legal rule to be enforced in such cases, is the one recognized and enforced in the case of Muschamp vs. the Lancaster Railway Company, that when a common-carrier receives goods to be transported to a certain point of destination expressed upon the face of his receipt therefor, that he undertakes to deliver the goods so received, either by his own line of transportation, or that he will do so by his own competent agents for that purpose, and that it is not a good legal ground of defence, in case of the loss of the goods, for the carrier to shew that his line of transportation stopped short of the place to which he undertook to carry the goods, and thereby, protect himself from liability, the more especially, when the fact, as to the extent of his line of transportation, was not known to the shipper of the goods, nor communicated to him by the defendant at the time of receiving the goods. The responsibility of the carrier of goods ceases with their *delivery at destination* according to the *direction of the person sending,* or according to the custom of the trade. Revised Code, 2044. By the 2054th section of the Revised Code, railroad companies, in this State, are not liable, as common-carriers, for the loss of goods beyond the terminus of their respective roads, provided the goods are delivered to the connecting road in good order ; but this provision of the Code, does not embrace express companies, who receive, and undertake to deliver small parcels of goods as common-carriers, for the benefit of the public, for certain rates of compensation charged therefor.

Having shown that the defendant was liable, under the law, to deliver the plaintiffs' goods at Cartersville, the place of destination, as expressed in the receipt given for the goods, could the defendant *limit that legal liability*, by the entry made on his receipt, in the following words: " which it is *mutually* agreed, is to be forwarded to our agency nearest or most convenient to destination only, and there delivered to other parties, to complete the transportation "? By the 2042d section of the Revised Code, it is declared that, " a common carrier *cannot limit his legal liability*, by any notice given, either by publication, or by *entry on receipts given*, or tickets sold. He may make an express contract, and will then be governed thereby." This section of the Code was considered, and construed by this Court, at the last term, in two cases. *Newby vs. Southern Express Company*, 36 *Ga. R.*, 635; and Purcell vs. the same, 37 *Ga. R.*, 103. This provision of the Code is, in our judgment, a wise and salutary provision, intended to protect the public from imposition and surprise, in the hurried transaction of business with these express companies, in the forwarding of small parcels, as well as valuable packages by all sorts of people, some of whom might not be able to read the printed stipulations annexed to the receipt given for the goods, and if they could read them, would not be able to comprehend the *legal effect* thereof. In the receipt now before the Court, it is stated, that it is "*mutually agreed*," etc., when the evidence in the record shews that the shipper of the goods did *not know* that the defendant's line of transportation stopped at Atlanta, and that fact was not communicated to him by the defendant, at the time of the reception of the goods, and yet, this Court is asked to decide that there was a *mutual agreement* between the defendant and the shipper, at the time of the reception of the goods to be forwarded to Cartersville, that the defendant was not to be liable for the loss of the goods beyond Atlanta. This case affords a practical illustration of the wisdom of that provision of the law which declares that the defendant, as a common-carrier, shall *not limit* his legal liability by *entry on his receipts given for the goods*. If he desires to limit his

Mosher & Co., vs. The Southern Express Company.

legal liability, as a common-carrier, let him make an express contract outside of, and independent of, his receipt given for the goods, and then there will be some *mutuality* in the agreement between the parties; at least, both parties will have a much better opportunity of understanding what is *the mutual agreement* between the shipper and the carrier.

Another ground of defence insisted on by the defendant is, that the goods were taken out of his possession by legal process. If it be conceded that this would be a good defence for the common-carrier, under the law defining his legal liability, still, it must fail in this case, according to the evidence contained in the record. It is not shewn what was the nature, or character of the legal process under which the goods are alleged to have been received, nor does it appear at whose instance, or against whom the legal process was sued out, by virtue of which, it is contended, the goods were seized. Whether the seizure of the goods was lawful or unlawful, whether the process was legal or illegal, whether it issued against the consignor or consignee of the goods, or against some third party, the record does not inform us. The burden of proof was upon the defendant to shew that it was, at least, a legal process, and that it issued against the proper parties, so as to make it available for his defence. The original legal process, or a duly certified copy thereof, would have furnished the best evidence of its nature and character, as well as who were the parties to it, in order that the Court might judge of the same. The bare statement that the goods were seized by legal process, and that fact communicated to the plaintiffs, without more, was not sufficient, in our judgment, to release the defendant from his legal liability as a common-carrier. In any view of which we have been able to take of the facts of this case, as presented by the record, it is the judgment of the majority of this Court, that the judgment of the Court below, granting a new trial, should be reversed.

Judgment reversed.

WALKER, J., concurred, but wrote out no opinion.

HARRIS, J., dissenting.

The plaintiffs below, in order to make out their case, put in evidence the receipt of the Express Company, containing the contract between the parties, in these words—" which it is mutually agreed is to be forwarded to our agency *nearest*, or most convenient to destination only, and *there* delivered to other parties to complete the transportation."

By the testimony, it appeared that the Express Company's line of operation was from Augusta to Atlanta, and not beyond. The package of goods lost was marked to Louisville, Kentucky. It was lost at some point on the Western and Atlantic Railroad, *beyond* Atlanta. The package was delivered at Atlanta by the agent of the Southern Express Company—that office being the company's office nearest to the destination of the package—to another Express Company using the State road. There was no evidence that there was any partnership or connexion in business between the two Express companies. My associates put their judgment that the Southern Express Company is liable to respond for the loss which has occurred, upon the ground, that when Mosher & Co. delivered the package for transportation, the Express Company did not inform them that their line of transportation extended only to Atlanta. The law makes no such requirement, as I understand it, of common-carriers. The common-carrier, whose route of transportation is between two points, as in this case, is bound only for the safe transportation of the goods from the one to the other, unless by special contract he changes his character as common carrier.

But the awkwardness of the decision of the majority is, that it is violative of a legal written contract, engaging to transport safely the goods on their line to their *nearest agency* to the destination of the goods. This is the written contract produced by plaintiff, nothing auxiliary or extending it. The goods were transported safely to Atlanta—no evidence of freight charged or paid beyond. Upon what principle a party expressly stipulating for pay to transport on its line, and *no farther*, can be held liable, without a con-

sideration being paid for the transportation beyond Atlanta, or the Express Company being connected in the business of transportation with the Express Company beyond Atlanta, and on which line the goods were lost, I confess my utter inability to comprehend.

What other notice to the freighter than the written one he held in his hand, was it necessary to give him? Did it not plainly inform him that the Express Company engaged to transport his goods only to *its* nearest office next to the destination of the goods, and that then, *at that point*, it would deliver the goods to *other parties*—(that is, a distinct and different common-carrier)—to *complete* the transportation. With this clear expression of the limits of the engagement of the Southern Express Company, why did not plaintiffs, if they were in doubt as to how far the line of transportation extended, then inquire, and, ascertaining that it extended only to Atlanta, why did they not make a contract with the company to transport the goods to their destination? It is very evident that the plaintiffs neglected to make such inquiries as their interests required, and to protect themselves against all misunderstanding, by their gross carelessness. I have no desire to favor such a class, especially when I cannot do so without violating an established maxim of law. I am prepared to hold Express Companies and common carriers strictly to the performance of the duties required of them by law, not allowing them to evade, by any indirection, their responsibilities as common carriers; but when their liability is limited in a matter which the law allows, I dare not extend, by interpretation, their liability beyond what they engaged to do. I, therefore, differ with my associates, and think they erred in reversing the judgment of the Court below, granting to the Southern Express Company a new trial.