## CENTRAL OF GEORGIA RAILWAY CO. *v.* LIPPMAN.

1. The liability of a common carrier of goods is that of an insurer, and in cases of loss no excuse avails such carrier, unless occasioned by the act of God or the public enemies of the State.   He may not limit his legal liability by a notice to the shipper, but he may, with certain restrictions, make an express contract, and both parties entering into it will be bound by its terms.

2. The liability of a carrier of passengers is not that of an insurer, but such carrier is bound by law to extraordinary diligence to protect the lives and persons of his passengers.   This duty can not be waived or released even by an express contract.   Being one in which the public has an interest, public policy forbids such a waiver or release.

3. A carrier who receives a passenger on one of its freight-trains is bound by the same standard of diligence as if the passenger were being transported on a regular passenger-train.   What will amount to extraordinary diligence varies with the character of the train.   A passenger who voluntarily seeks to be transported on a freight-train takes the risk of the usual and necessary jolts and jars which occur in the operation of such train, but the carrier is not relieved from the use of extraordinary diligence to the passenger to prevent unusual and unnecessary jolts and jars.   An express contract entered into by the carrier and the passenger, under the terms of which the carrier is released from all liability to the passenger for personal injuries received while a passenger on such freight-train, is in effect a contract by which the carrier undertakes to relieve itself from the consequences of the negligence of itself and servants, and can not be enforced.

Argued May 17,—Decided June 5, 1900.

Action for damages.   Before Judge Hart.   Jones superior court.   October term, 1899.

*Dessau, Harris & Birch,* for plaintiff in error.
*Guerry & Hall,* contra.

LITTLE, J. Lippman instituted an action against the Central of Georgia Railway Company, to recover damages for injuries

which he alleged he sustained, while a passenger holding a ticket which entitled him to be carried between two stations on the line of the defendant's railroad, in the county of Jones. A demurrer was filed to the petition, which was overruled. The case proceeded to trial and resulted in a verdict for the plaintiff in the sum of fifteen hundred dollars. Exceptions pendente lite were taken to the overruling of the demurrer, which were duly certified and entered of record, and an assignment of error thereon is made in the bill of exceptions. After the rendition of the verdict, the defendant filed a motion for a new trial, which was overruled, and it excepted. The evidence for the plaintiff made substantially the following case: On the 14th of October, 1897, plaintiff entered a way freight-train of the defendant at Gray's station, to be carried to Round Oak, having a mileage ticket entitling him to passage on that train, for which he had paid the price charged by the company. There was no car provided for passengers except the caboose, in which seats were placed. Soon after plaintiff entered the caboose the train suddenly commenced backing, and then made a violent jerk which threw plaintiff to the floor on his right side. He was rendered unconscious and was unable to arise until assisted by the flagman. On arriving at Round Oak he had to be assisted from the car. Evidence was also introduced as to the extent and nature of the injuries sustained by the plaintiff, their effect on his earning capacity, as well as their permanency, and as to the loss of income thereby, his pain and suffering, and the expense occasioned for medicine and nursing. The defendant introduced evidence tending to rebut that of the plaintiff as to the fact of the injury, and to show that there was nothing unusual in the movement of the cars by which the plaintiff claimed to have been injured. This evidence, however, disclosed the fact that the plaintiff was injured, at least to a certain extent, by his fall; but it was a contested question whether the fall was occasioned by the movement of the cars of the train or by a sudden attack of sickness occurring to the plaintiff at the time, and also whether the plaintiff was occupying his proper place as a passenger in the car, and whether his fall was attributable to his own or the company's negligence. It is not necessary that fur-

ther reference to the oral evidence, which is voluminous, should be made, in order that the points decided may be understood. The ticket in possession of the plaintiff at the time he was injured, and under which he claimed the rights of a passenger on said train, and which he introduced in evidence, reads as follows:

"MILEAGE TICKET No. 3756.

" P. Lippman, Macon, Ga., is entitled to travel 1000 miles on the Central of Georgia Railway Company, upon the conditions named in the contract attached and made a part hereof. This ticket will not be duplicated if lost.

Not good unless stamped here.　　　[Signed] J. C. Haile,

[Stamp of the company.]　　　　　　Gen'l Passenger Agt.

" CONTRACT.

" The conditions upon which this coupon mileage ticket is sold by the Central of Georgia Railway Company and purchased by the holder are as follows: . . 4th. That it is good on either passenger or way freight-trains, and entitles the purchaser to stop only at stations which by the time-card are designated as regular stopping-places of the train on which it is presented.. 5th. That for and in consideration of being permitted to use this mileage ticket for passage on the way freight-trains, I hereby release the company from all liability in case of personal injury, or for loss or damage to baggage, while using said freight-trains. . . 17th. This ticket expires one year from date of sale. I have purchased this ticket and agree to use it subject to the above conditions. [Signed] P. Lippman. "

On the list of stations there appeared Gray's station and Round Oak, designated as regular stopping-places.

A number of grounds, in addition to those assigning as error that the verdict was contrary to the law and evidence, are set out in the motion. After a careful examination of these, read in connection with the evidence and charge of the court applicable to each, we find it necessary only to consider and pass upon those specifically enumerated hereafter. In relation to those grounds of the motion not thus specifically considered, it is sufficient, in a general way, to say that in our opinion there was no error in overruling the demurrer which was filed to the

petition. The petition does, as we read it, clearly set out that the jerk or sudden stopping of the cars, which it is alleged caused the injury, was wholly unnecessary, and caused by the negligence of the defendant. Nor can we say that the verdict was contrary either to the law or to the evidence. It was very clearly shown that the plaintiff was severely injured by a fall, while a passenger on the defendant's train. According to his testimony, such fall was occasioned by a very violent and unusual jerk or sudden stoppage of the cars. Whether such jerk or sudden stop did in fact cause the injury which he received, or it was occasioned by other causes, and whether the alleged sudden and violent movements of the train were unusual and unnecessary, as well as the extent of the injuries and the effect of them upon the plaintiff, were questions of fact; and taking the evidence as a whole, including that going to show the character of the injuries sustained, there was sufficient evidence to warrant the verdict. Nor can we say that the verdict is excessive. There was evidence of pain, suffering, and, indeed, of permanent injury, and reduction of capacity to labor. The sum returned by the jury was that which was agreed on as compensation for all these elements of damage which, in cases of this character, fix the measure of recovery; and in our opinion it does not necessarily appear to have exceeded the amount which the jury were authorized to fix under the evidence in the case. Nor do we think there was any error in the admission of the evidence of the plaintiff and of the physicians as to the character and effect of the injury received. The allegations of the petition are, that the plaintiff was seriously and permanently injured; that he was thrown from his seat and for a considerable distance, upon the floor, so heavily as to render him unconscious; that he was deprived of the power of locomotion, and could not raise himself from the floor for some time; that he was lifted therefrom by others; that by so being thrown upon the floor he was seriously and permanently injured in his right hip, that the same was shocked and bruised and otherwise injured by the fall; that he has never recovered therefrom, he goes about with great difficulty, and his injuries are permanent. While the injury to the hip and other portions of the body might

have been set out more in detail, it is a fact, known to laymen as well as to experts, that injuries to the hip frequently shorten the leg, and, as we understand the evidence objected to, the testimony of the experts was directed to the point where the bones of the leg join the body, which is included, by common parlance, in the general word "hip," when speaking of the human body. For reasons which will appear from the further discussion of this case, there was no error in the refusals to charge, nor in the failure of the court to charge certain legal principles. Taken as a whole, the charge was fair and comprehensive, and embodied, as we think, correct principles of law. Without further reference to the grounds of the motion to which we have thus generally made reference, we come now to especially consider two of the grounds which are based on the instructions given to the jury, and which embody certain principles as being the law applicable to the facts of the case, the correctness of which is denied by the plaintiff in error.

1. Error is assigned to the following charge of the court: "Counsel upon both sides have insisted on and invoked the construction of the court upon article 5 under the written contract which has been offered in evidence, viz.: 'That for and in consideration of being permitted to use this mileage ticket for passage on the way freight-trains, I hereby release the company from all liability in case of personal injury, or for loss or damage to baggage, while using said freight-trains.' The court charges you that the railway company could not stipulate against its own negligence. Should you believe from the evidence in the case that the plaintiff was injured, and that he was injured by the negligence of the railroad company, the court charges you that the article referred to would not release the railroad company from liability." Passing, for the present, reference to other authorities cited by plaintiff in error to establish the proposition that a railroad company may contract for exemption from responsibility for injuries to passengers riding on freight-trains, we come to consider the meaning and application of the provisions of law which are contained in section 2276 of the Civil Code of this State, which is cited as authority for the proposition that the court erred

in charging the jury as heretofore set out. That section reads as follows: " A common carrier can not limit his legal liability by any notice given, either by publication or by entry on receipts given or tickets sold. He may make an express contract, and will then be governed thereby." Undoubtedly, if a carrier of passengers is a common carrier within the contemplation of this section of the code, and if the term " legal liability " refers to the obligation of the carrier of passengers to exercise extraordinary diligence to protect the lives and persons of the passengers, then, while the carrier may not limit such liability by notice, he may do so by an express contract, in which case the rights of the parties will be governed by the terms of the contract. Such a construction would give the right to a railroad company by express contract to limit its obligation to use extraordinary diligence to protect a passenger. In our judgment, for a number of reasons, no such construction can be placed upon this section of the code, nor do the provisions contained therein, as we think, apply to a carrier of passengers. Just here it may be well to consider for a moment the question whether certain previous adjudications by this court do not rule a contrary doctrine, as it is claimed they do. The cases referred to are: *Phillips* v. *Ga. R. R. Co.,* 93 *Ga.* 356; *Boyd* v. *Spencer,* 103 *Ga.* 828; *Southern Ry. Co.* v. *Barlow,* 104 *Ga.* 213; *Central Ry. Co.* v. *Ricks,* 109 *Ga.* 339. It is very freely admitted that in some, if not in all, of these cases this court applied the provisions of this section to a passenger carrier, but the question whether the terms of this section had such application was not made in any of them, nor was that question decided in any one of these cases. While much of the language used, both in the headnotes and in the opinions, seems to directly deal with the section as having application to passenger carriers, we are only to take the rulings made as finally decisive of the issues raised and presented in the several cases. It was assumed by all the parties, in the cases referred to, that the section did have such application, and so agreeing, the issues raised and determined were on the facts.

In the *Phillips* case, supra, the point involved was, whether there was an express contract which rendered the undertaking

of the company with reference to return transportation con-
ditional upon acts to be done at the completion of the original
trip and before the return trip was entered upon, and this court
there ruled that there was no written evidence of such contract,
and that so far as the parol evidence.went it tended to disprove,
rather than to prove, the making of any express contract what-
ever.    That was the point of inquiry in that case.    The ques-
tion in the case of *Boyd* v. *Spencer*. was, whether a mere notice
on a ticket, to the effect that the ticket expired at a given time,
to which the attention of the passenger was not called at the
time of the purchase of the ticket, would amount to an agree-
ment between the passenger and the carrier that the ticket
would be used in that time, so as to become "an express con-
tract" within the meaning of section 2276 of the Civil Code.
The question then for decision was stated by Mr. Justice Cobb,
in the opinion on page 830 to be "whether under the plain-
tiff's evidence it has been shown that he is not entitled to re-
cover, because a special contract had been made with him lim-
iting the time in which his ticket should be used." No other
question was then argued by counsel, discussed in consultation,
or intended to be ruled when that decision was rendered.    The
opinion must be read in the light of the actual question then
under discussion, and any language therein which apparently
rules any other question is purely obiter and is not binding as
authority.    In the case of *Barlow* the ruling was, that if one
enters the train of a carrier, not for the purpose of making the
journey called for by the ticket, but for the purpose of being
put off so as to make a case for damages, and he is ejected, he
is entitled to nominal damages only; and the ruling of the
court was distinctly put on the proposition that there was evi-
dence to support this state of facts, and it was, therefore, error
to charge the jury in language which, in effect, deprived the
defendant of the benefit of this defense.    The case of the *Cen-
tral Railway Co.* v. *Ricks,* supra, was to the effect that one who
had purchased a ticket having on its face an express stipula-
tion that it would be good for passage only during a specified
period, and who, in consideration of it having been sold at a
reduced rate, assented to the stipulation, had no legal cause of

complaint against the railway company for ejecting him, after the expiration of the limit of time, on his refusal to pay fare. While, as before stated, some of the conclusions reached, and much of the language used in those cases, are apparently contrary to what is here ruled, yet, as the decision made in none of those cases involved. the question which we pass upon here, they are not controlling as to such question.

Resuming consideration of the proposition that the provisions of the section of the code now under consideration do not apply to a carrier of passengers, it is significant that under this section the carrier who may limit his legal liability by express contract is denominated a "common carrier." These provisions were taken from the common law, and first became a part of our written law by the adoption of the Code of 1863, and are found in section 2041 of that code in precisely the same language as they appear in the Code of 1895. The Code of 1863 was, under the act of December 9, 1858, compiled by codifiers charged with the duty of preparing a code of laws for this State, which should embrace in a condensed form the laws of Georgia, whether derived from the common law, the constitution of the State, the statutes of the State, the decisions of the Supreme Court, or the statutes of England of force in this State. To ascertain the meaning of the section, therefore, reference is not to be had to a legislative intent, because the law there embraced was not the creation of our legislative body. Of course under the act adopting the Code of 1895 it is made to assume the dignity of written law. But, nevertheless, it can not, as written law, have any other and different application than it had at common law, because in incorporating it into the code its meaning was not changed, nor the application of the principles it contained extended. The term "common carrier" did not at the common law embrace a carrier of passengers. Neither does it under the definition found in the code in connection with section 2276. Nor are the liabilities of a common carrier and a carrier of passengers the same, either at common law or under our statutes. A common carrier is defined by Bouvier to be "One whose business, occupation, or regular calling it is to carry chattels for all persons who may choose to

employ and remunerate him." The same author defines another class of carriers, whom he denominates "common carriers of passengers," to be "such as undertake for hire to carry all persons indifferently who may apply for passage, so long as there is room, and there is no legal excuse for refusing." Mr. Hutchinson in his Treatise on the Law of Carriers, § 47, defines a common carrier to be "one who undertakes as a business, for hire or reward, to carry from one place to another the goods of all persons who may apply for such carriage." The same author, in section 497, declares that carriers of passengers as to the persons of those whom they carry are not common carriers. Mr. Greenleaf, in his work on Evidence (vol. 2, § 211), under the inquiry as to who is a common carrier, says that "the defendant is proved to be a common carrier by evidence that he undertakes to carry for persons generally, exercising it as a public employment, and holding himself out as ready to engage in the transportation of money or goods for hire, as a business, and not as a casual occupation." Again, in the same section he declares that "hackney-coachmen, and others, whose employment is solely to carry passengers, are not regarded as common carriers in respect of the persons of the passengers."

But it is not necessary that we should go further, in order to show that at common law the definition of a common carrier was confined to one who transported goods. All the text-writers, so far as we know, confine this appellation to such carriers. Indeed, our Civil Code, §§ 2263, 2264, defines a common carrier to be one who undertakes to transport goods for a compensation and who pursues the business constantly or continuously for any period of time, or any distance of transportation. These sections were likewise taken from the common law, and in connection with section 2276, the meaning of which we are now considering, were codified and placed together in the Code of 1863, and, to show that a distinction was meant to exist, another provision of the common law in reference to carriers of passengers was placed in immediate connection with them in the Code of 1863 at the same time, and appears now as section 2266 of our Civil Code, which declares that a carrier

of passengers is bound *also* to extraordinary diligence on be-
half of himself and his agents to protect the lives and persons
of his passengers. The use of the word "also" in the section
of the code, following the definition of a common carrier, and
declaring that common carriers shall be bound to extraordinary
diligence, is clearly indicative of the legal distinctions which
existed between common carriers and passenger carriers. If
the subject is examined, no possible doubt can remain that at
common law the term "common carrier" did not embrace a
carrier of passengers. Bouvier's Law Dictionary, "Common
Carrier"; Hutch. Car. § 47. See also Bouvier's Law Dict.
"Common Carriers of Passengers."

Now, as the provisions of the code, taken from the common
law, deal separately with the liabilities of common carriers and
carriers of passengers, and make a distinction between these
carriers by designating a common carrier as a carrier of goods,
this common-law meaning given to the words "common car-
rier" must go with them into the code, when the meaning of
a cognate section, which limits the right to fix liability to com-
mon carriers, is to be ascertained. At common law, and under
the statute (Civil Code, § 2264), a common carrier was an in-
surer of the goods which he undertook to transport. Such
was his legal liability, and he was made to answer in dollars
and cents for the value of goods lost or destroyed, unless
such loss or destruction was occasioned by the act of God or
the enemies of the King. No such liability extends to the
carrier of passengers, and, strange as it may seem, both at
common law and under our statute, the responsibility of a pas-
senger carrier for the lives and persons of his passengers is
less in degree than that of a common carrier in the transpor-
tation of goods. The former is bound only to extraordinary
diligence; the latter not only to extraordinary diligence, but,
if the goods are injured or destroyed, no excuse avails him,
unless such injury or destruction was occasioned by the act
of God or the public enemies of the State. The reasons are
obvious: A box of goods remains where it is placed; a man
has the power of locomotion and a will. When a carrier re-
ceives the first, he has absolute control; while his control of

the passenger is limited to the promulgation of rules which may or may not be observed. In the days of Chief Justice Marshall, a case came before the Supreme Court of the United States, which involved the determination of the question, whether the liability of the carrier which had received for transportation certain negro slaves, some of whom were drowned, was that of a common carrier or a carrier of passengers. 12 Peters, 150. It was contended that the liability of the carrier was that of a common carrier. In holding adversely to this claim, the Chief Justice said, that, in the nature of things and in his character, the slave which was being transported was more like a passenger than a package of goods; that he had volition and feelings which could not be disregarded; that these properties could not be overlooked in conveying him from place to place; that he could not be stowed away as a common package; that being left at liberty he might escape; and that the carrier did not have and could not have the same absolute control over him that it had over inanimate matter. In his Treatise on the Law of Notice, Mr. Wade, in § 531, treating the subject of notice by carriers limiting their liability, says: "The carriers' notices by which their liability is sought to be limited have reference— 1. To the notice by which they endeavor to qualify or restrict their responsibility, imposed by law, as special insurers of the articles committed to their charge. 2. The notice by which their responsibility as carriers is terminated."

Section 2276 of the Civil Code simply prescribes the common-law rule applicable exclusively to carriers of goods, and the legal liability referred to in the section is the liability which the law imposed on such carriers as insurers of the goods which they undertook to transport, and did not have and could not have, from the difference in the nature of the liability of each, any reference to a carrier of passengers. But it may be said that, as by the provision made in the section a common carrier could not limit his legal liability by entry on "tickets sold," it was the contemplation that such an inhibition should apply to passenger carriers, because tickets are only sold to and for the transportation of passengers. The reply to this suggestion is, that as to the baggage of passengers the carrier is un-

der liability as a common carrier, that is, an insurer of goods, while a different rule prevails as to the liability for injury to passengers. Bouvier's Law Dict. "Common Carriers of Passengers"; Story on Bailments, §§ 498, 590, 604. It is only on the ground of *negligence* that the carrier of passengers is held liable. 2 Gr. Ev. § 222. We take it, inasmuch as the section of the code confines the application of its provisions to *common carriers*, that it has reference to the baggage or personal effects of the passenger which it undertakes to transport, when the rule is extended to entries on tickets sold. This view is further strengthened because of the fact that while the carrier can not limit his liability, as we have seen, for extraordinary diligence to the passenger, he may by express contract relieve himself of the law which makes him an insurer of the baggage of that passenger. By section 2280 of our Civil Code it is provided that the carrier of passengers is responsible for baggage placed in his custody; and by section 2288 it is provided that a carrier of passengers may limit the value of the baggage to be taken for the fare paid, but that in case of loss, though no extra freight has been demanded or paid, the carrier is responsible for the value of the baggage lost. When these sections of the code are construed together and in connection with 2276, they will be found to be in entire harmony. This court in several cases has had occasion to make application of the section of the code now under consideration, and in each instance it has been treated as applying, even with the words "tickets sold" incorporated, to a carrier of goods. In the case of *Dibble* v. *Brown, 12 Ga.* 224, this court, through Judge Nisbet, said: "The question is mooted in the books, whether such persons, as regards baggage accompanying travellers, are liable as common carriers, or as private persons engaging to carry for hire. If the former, they are liable, as insurers against loss, except when occasioned by the act of God or the public enemies; and if the latter, they are bound only to due and reasonable skill and diligence in their undertaking. It is, however, now well settled that they are liable for baggage as common carriers. Without other compensation than the fare for passengers, they are liable for their baggage, as common carriers are liable for goods delivered to

them for transportation; that is, they are liable for baggage at all events, except when destroyed by the act of God, or irresistible accident, and the public enemies."

It is, therefore, not illogical that the Civil Code should provide, as it does in section 2288, that a carrier of passengers may limit the value of the baggage to be taken for the fare paid, because such a carrier of passengers is, as to the baggage of the passenger a common carrier, and it would seem, under the operation of section 2276, that while this limit of liability can not be made by a notice given, nor by an entry on the ticket sold to the passenger, it may be accomplished by an express contract made between the passenger who owns the baggage and the carrier who receives it, and that both will be governed by the terms of such contract. In the case of *Southern Express Company* v. *Newby,* 36 *Ga.* 635, this court ruled that an express company which pursues continuously the business of transporting goods is a common carrier, and, quoting exactly the section of the code under consideration, declared that "Our code has incorporated the rules of the common law, as expounded in Georgia, in *Fish* vs. *Chapman,* 2 *Kelly,* and with it we are satisfied." A reference to the case in 2 *Kelly* will show a very learned and comprehensive treatment of the right of a common carrier to limit his liability by notice. In the case of *Southern Express Company* v. *Purcell,* 37 *Ga.* 103, Chief Justice Warner, after declaring that the liability of a common carrier is regulated by law on the ground of public policy, and that he can not be permitted by his own act to limit the effect and operation of that law and thereby defeat that public policy, quotes the section of the code now under consideration and declares that "The legal liability of a common carrier as defined by *the law* is one thing; his legal liability as a common carrier, under an *express contract* made with the shipper, is another and quite a different thing. In the latter case, his liability will depend upon the terms of that express contract, and will be governed by it." Further on in the same opinion he says, "the common carrier and the shipper may enter into an express contract, *outside of the receipt given for the goods,* in regard to the carrier's liability, and then both parties,

having a *fair opportunity* to understand the terms of the contract, will be governed by it." Again, in the case of *Mosher* v. *Southern Express Company,* 38 *Ga.* 42, Chief Justice Warner, after quoting the Code of 1863, which is in the exact language of that now under consideration, says: "This section of the code was considered and construed by this court, at the last term, in two cases, *Newby* vs. *Southern Express Co.* and *Purcell* vs. the same. This provision of the code is, in our judgment, a wise and salutary provision, intended to protect the public from imposition and surprise, in the hurried transaction of business with these express companies, in the forwarding of small parcels, as well as valuable packages, by all sorts of people, some of whom might not be able to read the printed stipulations annexed to the receipt given for the goods, and, if they could read them, would not be able to comprehend the *legal effect* thereof. "

We have taken much time and occupied a good deal of space in endeavoring to show that the provisions of this section of the code are not applicable to a carrier of passengers. We have done so because the question is an important one, and also because a different ruling would seem to have been made in other cases decided by this court, to which reference has been made. But a final and conclusive answer to the proposition that this section does not apply to a carrier of passengers is found in the generally accepted proposition that a carrier of passengers for hire can not avoid, even by an express contract, his liability for negligence. So far, we do not know that it has ever been doubted in this State that a carrier of passengers can not by contract or otherwise avoid his liability for the negligence of himself or servants. The compilers of the American & English Encyclopædia of Law declare that such is the well-settled rule by the decisions of the Federal courts and the great weight of authority in the several States, and for this proposition they cite 112 U. S. 331; 87 Wis. 485; 67 Fed. Rep. 209; 19 Ohio St. 1; 82 Mo. 292; 71 Tex. 409; 19 S. C. 353. In the case of Central Railroad Co. v. Lockwood, 17 Wall, 357, the Supreme Court of the United States laid down three propositions on this subject: first, that a common carrier could not lawfully stipu-

late for exemption from responsibility when such exemption was not just and reasonable in the eye of the law; secondly, that it is not just and reasonable, in legal contemplation, for a common carrier to stipulate for exemption from responsibility for the negligence of himself or his servants; thirdly, that these propositions apply to both carriers of goods and carriers of passengers for hire, with special force to the latter. To the same effect see 126 Ind. 126; 65 Tex. 640; 20 Minn. 125. Judge Ray in his work on Negligence of Imposed Duties, Passenger Carriers, 262, states the general rule to be that "A carrier can not by contract exempt itself from liability for injuries and damages resulting from its own negligence or negligence of its servants. The public have an interest in the contract which a private individual can not waive"; citing 62 Me. 488; 40 Vt. 326; 98 Mass. 239; 80 Ala. 38; 114 Pa. 523. Mr. Wood, in his Law of Railroads (vol. 3, § 425), says: "In most of the States, while the carrier may impose reasonable limitations upon his liability, he can not by any provision, however explicit or direct, screen himself from liability for loss or injury resulting from his own or his servants' negligence. The principal ground upon which the right of a carrier to limit his liability by contract, in any manner he pleases, can be denied, is that by reason of the public character of his business such contracts are opposed to public policy." Mr. Fetter, in his Treatise on the Law of Carriers of Passengers, § 389, states, on authority, that the American rule is that common carriers can not, even by express contract, limit their liability for their own or their servants' negligence in respect to passengers for hire, and that this rule has been adopted in the great majority of the American States as a part of the common law; citing 47 Ind. 471; 166 Mass. 492; 125 Mo. 666; 52 Pa. 382. See also *Cook* v. *Western & Atlantic R. R.,* 72 *Ga.* 50; *Georgia Railroad & Banking Co.* v. *Keener,* 93 *Ga.* 808; *Georgia Railroad Co.* v. *Gann,* 68 *Ga.* 353. While the Georgia cases cited above are mainly applicable to cases respecting the carriage of goods, the principle of an inability to contract against their own negligence is equally applicable, but with greater force, to a carrier of passengers for hire. Even if section 2276 of the Civil Code

applied to carriers of passengers, it would not avail the plaintiff in error anything under the contract which is now being considered. That section refers to the *limitation* of liability by common carriers. If the contract which was entered into by the plaintiff in error and the carrier in this case were to be given the full effect it is claimed to have, it would not operate as a limitation, but as a complete and full release of liability, not only from the negligence of the company or its servants, but from all other causes as well. The words of the contract are, " I hereby release the company from all liability in case of personal injury . . while using said freight-trains. " Even if the right to limit his liability by express contract had been given to a passenger carrier, such authority could not be made to extend to an exemption from all liability. We are of the opinion that the contract set up by the defendant in the court below could not have the legal effect of barring the plaintiff's right to recover damages for injuries which he sustained while a passenger on the car, by reason of the negligence of the servants and employees of the defendant.

2. It is complained that the court erred in charging the jury that: " It is extraordinary diligence to which the court especially directs your attention, because the railroad companies are bound to use extraordinary diligence towards the safety of a person travelling upon their cars. Regardless of the mode of conveyance, a common carrier in each case is bound to the exercise of extraordinary care and diligence towards the conveyance of passengers." The specific error alleged is, that the charge ignored the written contract, and held defendant to extraordinary diligence, though the plaintiff had contracted in writing that he would not hold the company liable for personal injuries received while he was using the freight-train. We see no error in this instruction to the jury. A carrier of passengers is bound to extraordinary diligence on behalf of himself and his agents to protect the lives and persons of his passengers. We have endeavored to show that he could not by an express contract avoid this obligation which the law puts upon him. If the railroad company receives a passenger on one of its freight-trains, the character of the train upon which he is received does

not fix its liability, but the relation of carrier and passenger establishes it. In the case of *Ball v. Mabry,* 91 *Ga.* 782, this court ruled that the degree of diligence due from a common carrier to a passenger is extraordinary, no matter what means of conveyance may be employed; and that this standard of diligence applies as well where the passenger is carried upon a freight-train as it does where he is carried upon a passenger-train; and further, that a passenger who voluntarily takes passage on a freight-train takes the risk of the usual and necessary jolts and jars which happen in the making up and running of such train; but when a carrier takes a passenger on a freight-train, he must use extraordinary care in preventing unusual and unnecessary jolts and jars, so as to protect the passenger, just as he is required to do to prevent any jolt or jar on a passenger-train which would be likely to injure the passenger. This being true, if the carrier could not avoid the result of his negligence, in the one case, where the passenger is received on a regular passenger-train, he could not, in the other case, where the passenger is received on a freight-train.

We have given to the principles of law involved in this case careful consideration, and, in our opinion, they were properly stated by the trial judge in his instructions to the jury; and as there was evidence sufficient to sustain the verdict which they rendered, the court did not err in overruling the motion for a new trial.

*Judgment affirmed. All concurring, except Fish, J., absent.*