## Wytheville.

NORFOLK & WESTERN RAILWAY v. TANNER.

June 12, 1902.

Absent, Cardwell and Buchanan, JJ.

1. COMMON CARRIER—*Evidence.*—For the purpose of showing the speed at which a train was moving at the time of an accident, employees of the railway company and others, who are shown from their previous employments and occupations to have had frequent opportunities of observing trains in motion, are competent witnesses; the weight to be attached to their testimony being a matter for the determination of the jury in the light of all the circumstances.

2. PLEADING AND PRACTICE—*Instructions to Jury.*—It is not error to refuse instructions when the propositions of law, although correctly stated therein, are sufficiently covered by other instructions which are granted.

3. COMMON CARRIER—*Duty to Passenger—Section 1296 of Code.*—It is the duty of a common carrier to exercise the highest degree of care for the safety of its passengers, nor can it by contract exempt itself from this duty, or avoid the consequences of its own negligence, or that of its servants; such a contract being repugnant to section 1296 of the Code.

4. COMMON CARRIER—*Duty to Passenger Travelling Upon a Free Pass.*—A person travelling upon a free pass is clothed with every right appertaining to a passenger for hire; and a railway company, having by virtue of the pass undertaken to carry the person to whom it is issued, is charged with the duty of transporting that person safely, even though by agreement signed by the passenger it undertook to relieve itself from the consequences of the negligence of its servants; such an agreement being against the policy of the State, inoperative, and void.

Error to a judgment of the Circuit Court of Giles county,

rendered June 1, 1901, in an action of trespass on the case, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The opinion states the case.

*Johnston & Williams, Jos. I. Doran* and *A. W. Reynolds,* for the plaintiff in error.

*Lee & Howard* and *Henson & Mason,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

Mrs. Jennie Lee Tanner, a passenger upon a train of the Norfolk & Western Railway Company, which was derailed and wrecked, suffered injuries for which she sued in the Circuit Court of Giles county, and obtained a judgment. During the trial exceptions were taken to rulings of the court, and the case is before us upon a writ of error.

Plaintiff introduced witnesses to show the speed at which the train was moving at the time of the accident. One of them had been a section hand in the employment of the N. & W. Ry. Co., and was accustomed to travel upon passenger trains; another had very frequently travelled as a passenger over that part of the road at which the accident occurred; and the third had been engaged in the railroad service for thirty-one years as foreman in shops, as conductor of one of the trains of the defendant company, and as yardmaster. These witnesses were permitted to testify as to the speed at which the train was moving at the time of the accident. In our opinion, the evidence was admissible, its weight to be determined by the jury, taking into consideration the character, the intelligence and the experience of the witnesses.

The court gave all of the instructions asked for by the plain-

tiff, and instructions Nos. 3, 4 and 5 asked for by the defendant, and refused to give defendant's instructions numbered 1, 2 and 6.

Leaving out of view, for the present, instruction No. 1 for plaintiff, which presents a question of much interest, we shall, with respect to the others, content ourselves with the observation that they embodied sound principles of law, clearly stated, warwanted by the evidence, and which fairly presented the questions at issue between the parties. The instructions asked for by defendant and refused by the court, so far as they correctly state the law, were sufficiently covered by those which were granted, and their refusal could in no aspect be deemed prejudicial to plaintiff in error.

Mrs. Tanner was travelling upon a free ticket or pass, upon the back of which appears the following conditions:

"This free ticket is not transferable, and is forfeited if presented by any other than the person named, or if any alteration, addition or erasure is made upon it. The person accepting this free ticket, in consideration thereof, agrees to be bound by all its conditions, voluntarily assumes all risks of accidents and damages, and expressly agrees that the Norfolk & Western Railway Company shall not be a common carrier in regard to him, nor liable for any injury to him, or for any loss or damage to baggage or property belonging to him, while using this free ticket, whether caused by negligence of the employees of said company or otherwise.

"I accept the above conditions.

                                    Mrs. HARRY TANNER."

Plaintiff in error relies upon this agreement as a bar to this action. On behalf of Mrs. Tanner it is claimed that it is prohibited by section 1296 of the Code, which declares that "No agreement made by a common carrier for exemption from liability for injury or loss occasioned by his own negligence or misconduct shall be valid."

The principles of law regulating the duty owed by a common carrier of passengers are in many respects analogous to those which control a common carrier of goods. A common carrier of goods for hire is bound to deliver them safely, and from this duty can only be exonerated by the act of God, or of a public enemy. He is an insurer of their safety. With respect to passengers, a common carrier is bound to use the utmost care and diligence for their safety.

Plaintiff in error is a railroad company. It was chartered and is operated for the carriage of goods and passengers. Its duty as such is measured by the principles just announced. With respect to goods, it is an insurer. Its duty with respect to passengers is to exercise the highest degree of care for their safety. The ticket which the passenger holds is the token and the evidence of his right to be upon the train, but the obligation to transport him safely rests not alone upon the nature and terms of the ticket which he receives, nor indeed upon his having a ticket, but also upon the duty which the law has imposed, and which the carrier has assumed, to transport safely all passengers who commit themselves to its care.

It is said in Clark on Contracts, at page 469: "A railroad company, ship-owner, or other common carrier cannot, by stipulation in contracts of carriage, exempt itself from liability, or limit its liability, for injury to passengers or goods caused by its own negligence, or the negligence of its servants. Such a stipulation is, in this country at least, regarded as contrary to public policy. It may, however, exempt itself from losses or injuries occurring from other causes than its own negligence, as from accident, and for which it would be liable as an insurer."

Bishop on Non-Contract Law, at section 1092, is to the same effect: "A passenger may be said, in general terms, to be any person whom the carrier is, as carrier, transporting. The carrier's servant, going on his master's business, is not a passenger. But one riding on a free ticket may be such. . . . But a trespasser is not a passenger."

Upon this subject, it is said in Cooley on Torts, (2d ed.), p. 826: "Carriers of passengers, it is also held, cannot relieve themselves from the obligation to observe ordinary care by any contract whatsoever, even in the case of 'drover's passes,' which are given without charge to those who accompany consignments of cattle, or in cases where free passes are given as mere matter of courtesy or favor. In New York and New Jersey, however, it is held to be entirely competent to contract against liability for any negligence but the personal negligence of the carrier himself; which, in the case of a corporation, would embrace any negligence of their servants and of all but the managing board. The weight of authority, however, is most distinctly the other way, both in this country and in England."

In *Va. & Tenn. Railroad Co.* v. *Sayers*, 26 Gratt. 328, it was stated that a common carrier might to a certain extent limit the liability imposed upon him by the common law, "where goods of great value, or subject to extra risk, were delivered to him without notice of their character, or where losses happened by sheer accident without any possibility of fraud or collusion on his part, such as accidental fire, collision at sea, etc. Such cases as these led to a relaxation of the rule to the extent of authorizing certain exemption from liability in such cases, to be secured either by public notice brought home to the owner of the goods, or by inserting exemptions from liability in the bill of lading or other contract of carriage." But it was settled in that case to be the law of this State that a common carrier cannot, by contract, exempt himself from liability for acts arising out of his own negligence, or that of his agents.

In *Coggs* v. *Bernard*, 1 Smith's Lead. Cases, at page 354, objection was made that the declaration did not show a consideration, but Gould, J., said that this made no difference. "The reason of the action is the particular trust reposed in the defendant, to which he has concurred by his assumption, and in the executing which he has miscarried by his neglect."

With respect, then, to a carrier of goods, the consideration is not essential to the carrier's liability, which rests upon the violation of a duty which he has undertaken to perform. As we have said, the obligation with respect to the passenger is not identical with that in respect to goods, but is controlled by analogous principles.

In *Phil. & Reading R. R. Co.* v. *Derby*, 14 How. 468, where a suit was brought against a railroad company, by a person who was injured by a collision, it was held to be correct in the court to instruct the jury that, if the plaintiff was lawfully on the road, at the time of the collision, and the collision and consequent injury to him were caused by the gross negligence of one of the servants of the defendants, then and there employed on the road, he was entitled to recover, notwithstanding the circumstance that the plaintiff was a stockholder in the company, riding by invitation of the president, paying no fare, and not in the usual passenger cars.

In the course of the opinion, Justice Grier says: "When carriers undertake to convey persons by the powerful but dangerous agency of steam, public policy and safety require that they be held to the greatest possible care and diligence. And whether the consideration for such transportation be pecuniary or otherwise, the personal safety of the passengers should not be left to the sport of chance, or the negligence of careless agents. Any negligence, in such cases, mav well deserve the epithet of 'gross.' "

In *New York Central Ry. Co.* v. *Lockwood*, 17 Wall. 357, it was held:

"A common carrier cannot lawfully stipulate for exemption from responsibility when such exemption is not just and reasonable in the eye of the law.

"It is not just and reasonable in the eye of the law, for a common carrier to stipulate for exemption from responsibility for the negligence of himself or servants.

"These rules apply to both the common carriers of goods and common carriers of passengers, and with a special force to the latter."

In that case, it is true, Lockwood had what is known as a "drover's pass," and the court treats it as a carriage for hire, for while the plaintiff was entitled to pass free, yet the passage was one of the mutual terms of arrangement for carrying his cattle. The decision was that a railroad company carrying passengers for hire cannot lawfully stipulate not to be answerable for its own or its servants' negligence in reference to such carriage; and whether the same rules would apply to a free passenger was left undecided. Justice Bradley reviews a great number of cases bearing upon the subject. His opinion is of especial value in this investigation, because of the conclusive answer which he makes to certain arguments which have been also urged upon us. He says:

"It is argued that a common carrier, by entering into a special contract with a party for carrying his goods or person on modified terms, drops his character and becomes an ordinary bailee for hire, and, therefore, may make any contract he pleases. That is, he may make any contract whatever, because he is an ordinary bailee; and he is an ordinary bailee because he has made the contract.

"We are unable to see the soundness of this reasoning. It seems to us more accurate to say that common carriers are such by virtue of their occupation, not by virtue of the responsibilities under which they rest. These responsibilities may vary in different countries, and at different times, without changing the character of the employment. The common law subjects the common carrier to insurance of the goods carried, except as against the act of God or public enemies. The civil law excepts, also, losses by means of any superior force, and any inevitable accident. And if by special agreement the carrier is exempted from still other responsibilities, it does not follow that his em-

ployment is changed, but only that his responsibilities are changed. The theory occasionally announced that a special contract as to the terms and responsibilities of carriage changes the nature of the employment, is calculated to mislead. The responsibilities of a common carrier may be reduced to those of an ordinary bailee for hire, whilst the nature of his business renders him a common carrier still. Is there any good sense in holding that a railroad company, whose only business is to carry passengers and goods, and which was created and established for that purpose alone, is changed to a private carrier for hire by a mere contract with a customer, whereby the latter assumes the risk of inevitable accidents in the carriage of his goods? Suppose the contract relates to a single crate of glass or crockery, whilst at the same time the carrier receives from the same person twenty other parcels, respecting which no such contract is made. Is the company a public carrier as to the twenty parcels and a private carrier as to the one? . . . . . . . . . . .

"A common carrier may undoubtedly become a private carrier, or a bailee for hire, when, as a matter of accommodation or special engagement, he undertakes to carry something which it is not his business to carry. For example, if a carrier of produce, running a truck boat between New York City and Norfolk, should be requested to carry a keg of specie, or a load of expensive furniture, which he could justly refuse to take, such agreement might be made in reference to his taking and carrying the same as the parties chose to make, not involving any stipulation contrary to law or public policy. But when a carrier has a regularly established business for carrying all or certain articles, and especially if that carrier be a corporation created for the purpose of the carrying trade, and the carriage of the articles is embraced within the scope of its chartered powers, it is a common carrier, and a special contract about its responsibility does not divest it of the character.

"But it is contended that though a carrier may not stipulate

for his own negligence, there is no good reason why he should not be permitted to stipulate for immunity for the negligence of his servants, over whose actions, in his absence, he can exercise no control. If we advert for a moment to the fundamental principles on which the law of common carriers is founded, it will be seen that this objection is inadmissible. In regulating the public establishment of common carriers, the great object of the law was to secure the utmost care and diligence in the performance of their important duties—an object essential to the welfare of every civilized community. Hence the common law rule which charged the common carrier as an insurer. Why charge him as such? Plainly for the purpose of raising the most stringent motive for the exercise of carefulness and fidelity in his trust. In regard to passengers, the highest degree of carefulness and diligence is expressly exacted. In the one case of securing of the most exact diligence and fidelity underlies the law, and is the reason for it; in the other it is directly and absolutely prescribed by the law. It is obvious, therefore, that if a carrier stipulate not to be bound by the exercise of care and diligence, but to be at liberty to indulge in the contrary, he seeks to put off the essential duties of his employment. And to assert that he may do so seems almost a contradiction in terms.

"Now, to what avail does the law attach these essential duties to the employment of the common carrier, if they may be waived in respect to his agents and servants, especially where the carrier is an artificial being, incapable of acting except by agents and servants? It is carefulness and diligence in performing the service which the law demands, and an abstract carefulness and diligence in proprietors and stockholders who take no active part in the business. To admit such a distinction in the law of common carriers, as the business is now carried on, would be subversive of the very object of the law.

"It is a favorite argument in the cases which favor the extension the carrier's right to contract for exemption from lia-

bility, that men may be permitted to make their own agreements, and that it is no concern of the public on what terms an individual chooses to have his goods carried. Thus, in *Dorr* v. *Nav. Co.*, 11 N. Y. 485, the court sums up its judgment thus: 'To say the parties have not a right to make their own contract, and limit the precise extent of their own respective risks and liabilities, in a matter in no way affecting the public morals, or conflicting with the public interests, would, in my judgment, be an unwarrantable restriction upon trade and commerce, and a most palpable invasion of personal right.'

"Is it true that the public interest is not affected by individual contracts of the kind referred to? Is not the whole business community affected by holding such contracts valid? If held valid, the advantageous position of the companies exercising the business of common carriers is such that it places it in their power to change the law of common carriers in effect, by introducing new rules of obligation."

Bishop on Non-Contract Law, sec. 1077, says: "An examination of these cases will disclose that a gratuitous carriage, or one at a reduced rate, is by some deemed a foundation for giving effect to this sort of special bargain. But in preceding chapters we saw that the distinction between the liability and non-liability of one for accidents through his negligence to persons coming on his premises depends upon whether they are there rightfully or as trespassers; if the former, he is answerable; if the latter, he is not. Therefore, since the law is a system of reasoning, and it cannot contradict itself, the distinction as to the passenger carrier's exemption by agreement, thus propounded, has no place in our legal system; yet, instead of it, the true doctrine is that, while the road cannot cast off its obligations to one whom it permits to ride in its cars, it owes no duty to a trespasser, and no bargaining is required to relieve it from damages for accidents to him through its negligence."

In *Railway Co.* v. *Stevens*, 95 U. S. 655, the court uses the fol-

lowing language: "From our view of the case, it is not necessary to determine what would have been the rights of the parties if the plaintiff had been a free or gratuitous passenger, and we rest our decision upon the case of *R. R. Co.* v. *Lockwood, supra.* We have no doubt of the correctness of the conclusions reached in that case. We do not mean to imply, however, that we should have come to a different conclusion, had the plaintiff been a free passenger instead of a passenger for hire. We are aware that respectable tribunals have asserted the right to stipulate for exemption in such a case; and it is often asked, with apparent confidence, 'May not men make their own contracts, or, in other words, may not a man do what he will with his own?' The question at first sight seems a simple one. But there is a question lying behind that: 'Can a man call that absolutely his own, which he holds as a great public trust, by the public grant, and for the public use as well as his own profit?' The business of the common carrier, in this country at least, is emphatically a branch of the public service; and the conditions on which that public service shall be performed by private enterprise are not yet entirely settled."

In *Steamboat Co.* v. *King,* 16 How. 469, Justice Curtis reaffirms *Railroad Co.* v. *Derby, supra,* as resting not only upon public policy, but upon sound principles of law. He discusses and practically repudiates the doctrine with respect to the three degrees of negligence "as unfounded in principles of natural justice, useless in practice, and presenting inextricable embarrassment and difficulties."

In the case of *B. & O. R. R. Co.* v. *Voight,* 176 U. S. 498, it was held that "An express messenger occupying an express car, in charge of express matter, in pursuance of a contract between the railroad company and the express company, is not a passenger within the meaning of the rule of public policy which denies the validity of contracts limiting the liability of a carrier to a passenger for negligence, and cannot recover of the railroad

company for injuries sustained in a collision, where the contract between the companies exempt the railroad company from such liability, while his own contract, voluntarily entered into as a condition of employment, assumes all such risks and stipulates that he will indemnify and hold his employer harmless from all liability for such accident or injury."

The decision in this case, as will be observed from this extract, rests upon its peculiar circumstances, but the court in its opinion uses language applicable to that under consideration. After citing with approval *Railroad Co.* v. *Stevens, supra*; *Railroad Co.* v. *Lockwood, supra,* and other similar decisions, it is shown that they rest upon two principles:

"First, the importance which the law justly attaches to human life and personal safety, and which therefore forbids the relaxation of care in the transportation of passengers which might be occasioned by stipulations relieving the carrier from responsibility.

"Secondly, that the fundamental proposition relied on to nullify contracts to relieve common carriers from liability for losses or injuries caused by their negligence is based on the position of advantage which is possessed by companies exercising the business of common carriers over those who are compelled to deal with them."

We feel that we could rest with safety upon the law as stated by the text-writers and decisions which we have considered, but the question involved is an interesting and important one, and has been before many of the State courts, where it has been variously decided. We shall not undertake to review all the cases. We admit that there are many and recent decisions of courts of the highest respectability which maintain the power of the carrier to exempt himself by contract from liability for the consequences of its own negligence to a gratuitous passenger.

In *Jacobus* v. *Railroad Co.*, 20 Minn. 125, the court says: "For the reason that the degree of care and diligence exacted of

a bailee should be proportioned to the importance of the business and of the interests at stake, the law imposes upon the common carrier of passengers the greatest care and foresight for the safety of his passengers, and holds him liable for the slightest neglect. And for like reasons the same extreme care is required, though the passenger be carried gratuitously. Having undertaken to carry, the duty arises to carry safely. . . . . . . . . .

"There are two distinct considerations upon which the stringent rule as to the duty and liability of carriers of passengers rests. One is a regard for the safety of the passenger on his own account, and the other is a regard for his safety as a citizen of the State. The latter is a consideration of public policy growing out of the interest which the State or government as *parens patriæ* has in protecting the lives and limbs of its subjects. . . .

"So far as the consideration of public policy is concerned, it cannot be overriden by any stipulation of the parties to the contract of passenger carriage, since it is paramount from its very nature. No stipulation of the parties in disregard of it, or involving its sacrifice in any degree, can, then, be permitted to stand. Whether the case be one of a passenger for hire, a merely gratuitous passenger, or of a passenger upon a conditional free pass, as in this instance, the interest of the State in the safety of the citizen is obviously the same."

See *Rose* v. *Des Moines R. R. Co.*, 39 Iowa, 246; *Penn. Railroad Co.* v. *Butler*, 57 Penn. 335; *Railway Co.* v. *McGown*, 65 Tex. 640; and *Bryan* v. *Railway Co.*, 32 Missouri Appeal Reports, 228; *Tarbell* v. *R. R. Co.*

When a passenger is invited or permitted to enter a train, whether upon a free pass or upon a ticket for which he has paid the usual charge, he is in no sense a trespasser. He is rightfully upon the train, and the railroad company has accepted him as a passenger, and assumed the duty of transporting him safely while that relation continues. Can it be relieved from the performance of that duty by an agreement with the passenger for

a reduced fare, or for a gratuitous passage? In the absence of all agreement on the subject, it is too plain for argument that a railroad company would be responsible to anyone lawfully upon its train as a passenger who was injured by the negligent or wrongful act of its servants. If the passenger is being carried for hire, authority is abundant to establish its liability, notwithstanding any agreement between the carrier and the passenger to the contrary. *Railroad Co.* v. *Lockwood, supra,* and cases there cited; and *Railroad Co.* v. *Stevens, supra.*

The ground upon which such agreements are held to be invalid is that they violate public policy. Is the State solicitous only for the safety of those who pay their fare? How does the fact that the passenger is being transported for hire, or as a mere gratuity, interest or affect the State? The policy of the State is to enforce with an equal hand the performance of those duties upon which the safety of her citizens depends. Our statute, found in section 1296 of the Code, is clear, direct and explicit. Its meaning is so plain that we hesitate to construe it lest it should be found that "the interpreter is the hardest to be understood of the two."

As is shown by Judge Bradley, *supra,* a common carrier is such by virtue of his occupation, and not by reason of his responsibility growing out of his occupation, and to say that though a statute invalidates all agreements made by a common carrier looking to exemption from liability for negligence such a carrier is not within its terms, because by making the contract he ceases to be a common carrier and becomes bound as an ordinary bailee, is to reason in a circle.

Under our statute a common carrier cannot by contract put off that character, and avoid the consequences of his own negligence, or that of his servants. The statute, while brief and simple in its terms, is broad and comprehensive in its scope and effect, and brings within its protection all those with respect to whom the common carrier has assumed a duty and an obligation. The State has no interest in the free carriage of any of her

citizens. She is interested in the safe carriage of all of her citizens. Whether the carriage is a gratuity or for hire is a question that interests the passenger and the carrier, but not the State.

The principle which we have endeavored to establish is thus presented in 2 Shearman & Redfield on Neg. (5th ed.), sec. 491: "It is well settled that, in the absence of a special contract, a passenger travelling gratuitously has a perfect right of action for injuries suffered by him through the carrier's negligence. . . . There is no practical difference between the degree of care which a free passenger has a right to claim, and that to which a paying passenger is entitled."

When a common carrier undertakes the carriage of a passenger, whether gratuitously or for hire, the contract involves not only their duties and obligations to each other, but such as are imposed upon them by the public policy of the State. "When the law-making power speaks on a particular subject over which it has constitutional power to legislate, public policy in such a case is what the statute enacts." *U. S.* v. *Trans. Mo. Ass'n,* 166 U. S. 290.

A free pass having been issued to Mrs. Tanner, she was clothed with every right appertaining to a passenger for hire, and the railroad company having undertaken to carry her, came under the duty to transport her safely, and the agreement by which it undertook to relieve itself from the consequences of the negligence of its servants is inoperative and void as against the policy of the State, as declared by its statute.

We conclude, therefore, that the conditions upon the pass given defendant in error do not constitute a defence to the action brought by her, and that there was no error in the ruling of the Circuit Court giving the first instruction asked by defendant in error.

Upon the whole case, we are of opinion that the judgment should be affirmed. *Affirmed.*