HOLLY, next friend, *v.* SOUTHERN RAILWAY COMPANY.

One who receives of a railroad company a gratuitous pass over its line, which by its terms is "issued only on condition that the person accepting it assumes all risks of accidents, and expressly agrees that the company shall not be liable, under any circumstances, for any injury to the person, or loss or damage to the property of the person using it," can not recover of the company the value of baggage lost while traveling on such pass.

Argued February 18, — Decided March 29, 1904.

Action for damages.    Before Judge Reid.    City court of Atlanta.    January 20, 1903.

*Anderson, Anderson & Thomas,* for plaintiff.    *Dorsey, Brewster & Howell, Sanders McDaniel,* and *J. D. Bradwell,* for defendant.

CANDLER, J.    The plaintiff, as next friend of her minor daughter, Lillian Leslie Holly, sued the Southern Railway Company for damages on account of the loss of a trunk and its contents.    The original petition set out merely the delivery of the trunk to the defendant in Washington, D. C., and the receipt of a check therefor; a demand for it in Atlanta, and the failure, then and subsequently, to comply with that demand; and charged that the trunk was lost by reason of the negligence of the defendant

company.    By an amendment the allegation of negligence was
stricken, and in lieu thereof it was alleged that the plaintiff de-
manded the trunk of the defendant and its delivery was refused.
From another amendment it appeared that at the time the trunk
was alleged to have been lost the plaintiff and her daughter were
riding over the defendant's line of railroad on a free pass.    The
defendant, in its answer, denied liability, and averred, "by way of
plea in bar" to the action, "that plaintiff was not its passenger in
the sense alleged in said declaration, so as to make it legally lia-
ble for any loss of her baggage; for that plaintiff at the time was
gratuitously on its train and without the payment of fare, she be-
ing allowed to ride upon said train by virtue of a complimentary
pass gratuitously furnished her without any consideration what-
ever to defendant.    Such pass from Atlanta to Washington was
allowed her upon the following conditions, which it contained;
' This ticket is issued only on condition that the person accepting
it assumes all risks of accidents, and expressly agrees that the
company shall not be liable, under any circumstances, for any in-
jury to the person, or loss or damage to the property of the per-
son using it.' . . These conditions are binding upon the plaintiff,
and bar her right to recover for the alleged loss of her baggage."
The plaintiff demurred to the portion of the answer which we
have quoted, but the demurrer was overruled.    At the trial the
plaintiff proved the delivery of the trunk to the defendant in
Washington ; that upon presentation of the check for it at the
baggage depot in Atlanta it could not be found; that diligent
search was made for it, then and afterwards, by the employees of
the defendant company, without result ; and that the trunk had
never been returned to its owner.    It was not shown how the
trunk was lost, or that the agents of the railroad company had
been in any manner negligent in handling it.    The only evidence
introduced by the defendant was in support of that portion of its
plea which we have already set out.    The court, on motion, di-
rected a verdict for the defendant.    To this ruling, and to the
overruling of her demurrer to the answer, the plaintiff excepted.

From the foregoing it will be seen that the only question pre-
sented for our determination is whether, in an action against a rail-
road company by one who has ridden over its line on a free pass,
to recover the value of baggage alleged to have been lost by it, it

is a complete defense to show that as a condition of the gratuity extended him the plaintiff agreed that the defendant should not be liable for any loss of property or damage to person which he might sustain while using the pass.   In the present case the plaintiff seems to have recognized that the ordinary relation of carrier and passenger did not exist between her and the defendant; for by an amendment she struck the allegation of negligence in her original petition, and stood squarely on the bailment of her property, which, by her own showing, was entirely gratuitous. Regardless of any agreement or condition involved in the issuance of the pass, the defendant as a gratuitous bailee could only be held liable for gross negligence, which, under ordinary circumstances, it would be bound to disprove upon the introduction by the plaintiff of evidence of the bailment and the loss of the property bailed.   Civil Code, § 2896.   Stated a little differently, then, the question now before us is, may a gratuitous bailee, as a consideration of the gratuity, stipulate against his own gross or wanton negligence ?   The precise point involved seems never to have been squarely decided in this State; and while there are numerous authorities on the subject to be found in the reports from other States, the conclusions reached by the various courts present, unfortunately, a hopeless conflict of opinion.   It is well settled in Georgia that a railroad company may, by a special contract, change the nature of its liability, provided the contract be founded upon a sufficient consideration, be reasonable, and be not void as against public policy.   It has been held that it may stipulate that it shall be liable only as a private carrier, and not as a common carrier, the consideration of the stipulation being the grant of a reduced rate of freight.   *Central R. Co.* v. *Glascock*, 117 *Ga.* 938.   Upon a like consideration a contract has been held valid which provided that the company should be liable only for gross negligence.   *Cooper* v. *Raleigh R. Co.*, 110 *Ga.* 659.   These cases are in entire harmony with the principle ruled in *Georgia R. Co.* v. *Keener*, 93 *Ga.* 808, where a contract was held invalid which did not seek to change the nature of the company's liability, but named an arbitrary amount which might be recovered in the event of loss or damage by the defendant's negligence.   In the present case, the railroad company, in the absence of any agreement, condition, or stipulation, could, as a gratuitous bailee, only

be held liable for gross negligence.    The plaintiff paid it no fare and offered to pay it none, but solicited of it the favor of free transportation for herself and her baggage over its line of railroad. This favor it was under no obligation whatever to grant.    Why, then, could it not legally impose as a condition to the extension of this favor that she should assume all the risks of the journey, and that it should not be held liable for any loss of her property or injury to her person?    Why may not the railroad company say: "I will give you a free ride, and carry your baggage for you, but I will not assume responsibility for the security of your property or the safety of your person.    The duties imposed upon me by law to safeguard the persons and property of those whom I am obliged to carry give me all that I can do; and while I do not object to your riding on my train without the payment of fare, I can not undertake to assume a responsibility as a result of my courtesy."

The only reason that can be urged against the validity of such conditions to the grant of a free pass is that it is opposed to public policy; and we confess our inability to see the force of this argument.    If gratuitous transportation by railroads were of such common occurrence as to involve the public or any considerable proportion thereof, it might well be said that considerations of public welfare would forbid that the company should in any way restrict its liability in a matter of this sort.    But for every gratuitous passenger carried by a railroad company many are carried who have paid full fare, and to whom the company is due the full measure of extraordinary diligence; and it is a self-evident proposition that negligence as to gratuitous passengers would involve the greater consequences of negligence to passengers who have paid fare.    The person riding on a free pass is, in a sense, protected by the fact that on the same train and in the same car with him are others to whom the railroad company owes the highest degree of care known to the law, and the further fact that any negligence to him necessarily involves the safety of those around whom the law throws a more ample protection than he would otherwise enjoy.    In this view of the case we fail to see how the question of public policy can affect the imposition of conditions to the grant of a free pass by the terms of which the company is exempted from liability.    What we now hold is in no way in

conflict with the ruling of this court in the case of *Central R. Co.* v. *Lippman*, 110 *Ga.* 665. In that case it was held that section 2276 of the Civil Code, which provides that a common carrier can not limit his legal liability by any notice given, either by publication or by entry on receipts given or tickets sold, but that he may make an express contract, by which he will be governed, has no application to a carrier of passengers ; and it was further decided that a carrier of passengers for hire can not by contract exempt himself from liability for his negligence. A broad distinction is to be noted between the *Lippman* case and the case now under consideration. There the relation of carrier and passenger existed between the defendant and the plaintiff in its full sense, while here there was no consideration whatever for the carriage, and the plaintiff herself, by her petition as amended, treated the transaction out of which the suit arose as a mere bailment, entirely gratuitous in its nature.

As before stated, the various courts of this country hold widely divergent views on the subject now under consideration. We will call attention to a few of the cases which support the ruling now made, and which, in our opinion, afford excellent reasons for our position. In the case of Quimby *v.* Boston R. Co. (Mass.), 5 L. R. A. 846, 23 N. E. 205, it was held that "an agreement by one who accepts a railroad pass purely as a gratuity, that he will assume all risks of accident of every name and nature, is not against public policy, and will prevent a recovery by him for injuries occasioned by the negligence of the railroad company's servants." It appeared in that case that the pass was issued with a proviso that the plaintiff sign the agreement referred to, but as a matter of fact he did not sign it, not having been required to do so by the conductor; and the court held that his failure to sign the agreement was unimportant, for, it was said, "having accepted the pass, he must have done so on the conditions fully expressed therein, whether he actually read them or not." It was further said in the opinion that the reasoning that the agreement or condition involved was void as against public policy "can have no application to a strictly free passenger, who receives a passage out of charity or as a gratuity. Certainly the carrier is not likely to urge upon others the acceptance of free passes, as the success of his business must depend on his receipts. . . The instances can

not be so numerous that any temptation will be offered to carelessness in the management of their trains or to an increase in their fares, in both of which subjects the public is interested." In Kinney *v.* Central R. Co., 32 N. J. L. 407, 90 Am. Dec. 675, it was held that a contract that in consideration of a free passage a passenger will assume the risk of injuries to his person from the negligence of the servants of the railroad company is valid in law; and that a passenger who receives knowingly a free ticket with an endorsement of such a contract upon it will be bound by its terms, and can not recover for injuries sustained from the cause specified. A well-reasoned case on this subject is that of Muldoon *v.* Seattle R. Co., 7 Wash. 528, 22 L. R. A. 794, wherein it was held: "A passenger riding upon a free pass, which contains conditions limiting the liability of the carrier on account of negligence, can not recover for injuries received through the negligence of the carrier's servant." On the question of public policy, Stiles, J., delivering the opinion, said: "When the intending passenger proposes to the carrier that it do something for him which it is not, under any conceivable circumstances, required by law or duty to do, viz., to carry him without any compensation whatever, and when the whole matter is at the option of either party to agree or not, it is difficult to see why public policy should step in and deny the right of the carrier to limit its chances of loss in the operation, even though a careless servant cause unintentional injury to the passenger. The theory that the granting of passes upon condition like this will tend to demoralize the servants of railway and other carriers and thereby imperil the limbs and lives of paying passengers seems to us mere fancy; and yet this is about the only consideration urged by those courts which hold that there is a public policy in the way of such agreements. Absolutely gratuitous passes represent but an infinitesimal portion of the mileage actually traveled, and of all the passengers carried but an infinitesimal number are injured by the carrier's negligence. The precautions adopted by managers and employees of land and water transportation companies are not gauged by the fact that there may be free passengers aboard, and never will be while the doctrine of respondeat superior has its present healthy existence." See also Griswold *v.* New York R. Co. (Conn.), 4 Atl. 261; Wells *v.* R. Co., 24 N. Y. 181; Perkins *v* R. Co., 24 N. Y. 196, 82 Am.

Dec. 282; Bissell *v.* R. Co., 25 N. Y. 442; Northern Pac. R. Co. *v.* Adams (U. S. Sup. Ct.), decided February 24, 1904.

In conclusion we will say, that, reasoning by analogy, it seems to us clear that if, as has been held by the Georgia cases to which we have already referred, a railroad company acting in its public capacity as a common carrier may by special contract relieve itself from liability for any but gross negligence, it may, as a consideration for doing something which it is under no obligation to do, and in the performance of which it would under no circumstances be liable for anything less than gross negligence, require that it shall, in the event of loss or damage, be held liable under no circumstances whatever. It follows that in the present case the railroad company made out a complete defense, and that the court properly directed a verdict in its favor.

　　　　　*Judgment affirmed. All the Justices concur.*

LAMAR, J. (with whom concur FISH, P. J., and TURNER, J.) It appears that the trunk was lost, and there is neither allegation nor evidence of any negligence by the gratuitous bailee. The case at bar does not therefore involve a decision on the effect of gross, willful, or criminal negligence, nor do the cases cited deal with injuries or losses occasioned by such negligence. I concur in the judgment of affirmance, but not in all the reasoning of the foregoing opinion.