4335.　CHARLESTON & WESTERN CAROLINA RAILWAY
COMPANY *v.* THOMPSON.

1. As a general rule, a stipulation in a free pass given by a carrier, to the effect that the person who accepts it assumes all risks of injury in transportation, is enforceable; and as to a passenger who has accepted transportation under such a pass a carrier is liable only for injuries resulting from wantonness or wilful negligence; but an exception to this rule is presented in the provision of the "Hepburn act" (act of June 29, 1906, c. 3591, 34 Stat. 584 [U. S. Comp. St. Supp. 1911, p. 1288]) which permits a railroad company to issue free transportation to its employees and members of their families. As between such employees and the railroad company which employs them, the privilege and benefit of being afforded transportation without cost may be regarded as a part of the consideration paid for the services of the employee, and may be treated as an element of value within the contemplation of both parties at the time of entering into the contract of employment. Consequently the court did not err in refusing to charge the jury that if the plaintiff (the wife of an employee) was traveling on a free pass, she would not be entitled to recover.

2. Under the facts of this case, it was not harmful error for the court to refuse to charge that testimony of a party who offers himself as a witness in his own behalf is to be construed most strongly against him when it is self-contradictory, vague, or equivocal; and that unless there is other evidence tending to establish his right to recover, he is not entitled to a finding in his favor, if that version of his testimony most unfavorable to himself shows that the verdict should be against him. The applicability of this rule of evidence in any particular case is addressed to the sound discretion of the trial judge, who must determine, in the first instance, as to whether the testimony is self-contradictory, vague, or equivocal. As the trial judge sees and hears the witnesses, error in his application of the rule must be very manifest before the exercise of his discretion will be interfered with.

3. The court did not err in refusing a new trial upon the ground of the motion therefor based upon newly discovered evidence that the plaintiff was not legally married to the employee on account of whom the free pass was issued. The alleged newly discovered testimony at most furnishes proof of only a presumptive marriage; and this must yield when brought into competition with proof of an actual marriage. Upon this point the decision is controlled by the ruling of the Supreme Court in *Norman* v. *Goode*, 113 *Ga.* 121 (38 S. E. 317). "With no competing actual marriage proved, the law presumes marriage from cohabitation and repute; but this presumption the law declines to raise in opposition to a competing marriage actually proved." *Jenkins* v. *Jenkins*, 83 *Ga.* 287 (9 S. E. 542, 20 Am. St. R. 316).

4. The evidence authorized the verdict, and there was no error in refusing a new trial.

DECIDED AUGUST 30, 1913.

Action for damages; from city court of Richmond county—Judge W. F. Eve. July 11, 1912.

The plaintiff, Lizzie Thompson, alleged and testified, that she was a passenger on a train of the defendant railway company October 16, 1910, traveling from McCormick, South Carolina, to Augusta, Georgia; that she paid full fare for her transportation; and that through the negligence of the company a collision occurred, in which she was injured internally. On the trial the defendant's conductor testified that the plaintiff and two children were traveling on a free pass from McCormick, South Carolina, to Augusta, Georgia, and that she signed her name by cross-mark on the back thereof. The plaintiff amended her petition by denying this, and the defendant amended its answer, pleading that the plaintiff at the time of injury was traveling on a free pass from McCormick, South Carolina, to Augusta, Georgia, issued to her as the dependent wife of a railroad laborer, pursuant to the interstate-commerce law, known as the "Hepburn act." This pass was as follows:

"Charleston & Western Carolina Railway Company Trip Pass.

Pass Lizzie Thompson and two children, Rose and George, from McCormick, S. C., to Augusta, Ga. On account of wife and dep't children Rdw. Lbr. Good for one trip only until Nov. 15, 1910, when countersigned by W. L. Humphrey.

Date Oct. 15, 1910.

No. 12923.

A. W. Anderson, General Superintendent.

[In the margin] Countersignature: W. L. Humphrey. Not transferable.

[On the back] This free ticket is not transferable, and if presented by another person than the individual named thereon, or if any alteration, addition, or erasure is made upon it, it is forfeited, and the conductor will take it up and collect full fare. The person accepting this free ticket agrees that the Charleston & Western Carolina Railway Company shall not be liable, under any circumstances, whether of negligence of agents or otherwise, for any injury to the person, or for any loss or damage to the property of the passenger using the same.

I accept the above conditions.

————————————X————————————

(Sign in ink or indelible pencil.)

Conductor will not recognize this pass until properly signed."

34

It was testified that this pass was taken up and punched by the conductor, but the pass was part of a round-trip ticket, issued at Augusta, of which the other half was not produced, and the conductor's written report failed to show any passenger riding on a free pass from McCormick, South Carolina, to Augusta, Georgia.

The defendant excepted pendente lite to the court's refusal to allow an amendment to the answer, by which it was sought to set up an express contract relieving the defendant from liability for negligence; but the rejected amendment is not embodied in the bill of exceptions, nor does the brief of counsel for the plaintiff in error specifically refer to the refusal to allow the amendment.

*William K. Miller,* for plaintiff in error.

*William H. Fleming,* contra.

RUSSELL, J. (After stating the foregoing facts.) Lizzie Thompson brought suit against the Charleston & Western Carolina Railway Company for damages alleged to be consequent upon injuries received by her as a passenger. She alleged that she purchased a ticket and paid full fare for her transportation. To dispute this the defendant introduced a free pass, and the conductor testified that he received only this pass for the transportation of the plaintiff and her two children. For the reason that the evidence as to the nature of the plaintiff's injuries is in conflict, it is unnecessary to consider the testimony as to the extent of her injuries, or the showing by the defendant company to the effect that her condition was due to causes which anteceded the alleged injury.

The three assignments of error in the grounds of the motion for a new trial as first amended raise two questions. One is as to the right of the plaintiff to recover if the jury believed she was traveling upon a free pass, and the other relates to the refusal of the court to instruct the jury that where the testimony of a party who offers herself as a witness in her own behalf is self-contradictory, vague, or equivocal, the jury should adopt that construction of it which is most unfavorable to her contention. The first exception naturally subdivides itself into two questions: (1) Can a person injured while riding upon a free pass recover for injuries other than those due to gross neglect on the part of the carrier? (2) Can a member of the family of a railway employee who uses a pass for transportation, and who, under the provisions of the "Hepburn act" (act of June 29, 1906, c. 3591, 34 Stat. 584), is entitled to free

transportation, be held, as a matter of law, to be using a *free* pass?

1.   As to the first question there is a wide diversity of opinion among the authorities.   In many jurisdictions it is held that any stipulation by which a common carrier seeks to avoid liability for negligence which may cause injury to a passenger is contrary to public policy.   However, other courts of equal eminence hold that it is simply a matter of contract; that the carrier, as related to one transported free of charge, is not a common carrier, but that the person so transported is merely a guest, and that public policy will not prevent the person to be carried and the transportation company from agreeing that the passenger shall assume the risks of travel. Among those States in which it has been held, upon grounds of public policy, that the right to exemption from all liability can not be extended to a carrier of passengers are Alabama, Arkansas, Indiana, Iowa, Minnesota, Mississippi, Missouri, Pennsylvania, Texas, Vermont, and Virginia.   The doctrine announced by these courts may well be summarized by the ruling of the Supreme Court of Indiana in Louisville &c. Ry. Co. *v.* Faylor, 126 Ind. 126 (25 N. E. 869), in which, discussing the case of a free pass containing a waiver of liability for negligent injuries, the court says: "Common carriers are subject to the same liability for injuries resulting from negligence to persons riding on a free pass as they are to those who pay full fare."   See also: Norfolk & Western R. Co. *v.* Tanner, 100 Va. 379 (41 S. E. 721); Huckstep *v.* St. Louis &c. R. Co., 166 Mo. App. 330 (148 S. W. 988); St. Louis, Iron Mountain & Southern R. Co. *v.* Pitcock, 82 Ark. 441 (101 S. W. 725, 118 Am. St. R. 84, 12 Ann. Cas. 582); Memphis &c. R. Co. *v.* Steel (Ark.), 156 S. W. 182.   All of these decisions rest upon the ground that if public policy, out of regard for the safety of human life and person, declares a contract of waiver of liability void, it can make no difference whether the passenger who made the contract paid fare or was riding free; and to support this proposition it is said that the life of one kind of passenger is just as sacred, in the eyes of the law, as the other, and that the same negligence which would kill a free passenger might kill a full-paid passenger, and there is no reason why the carrier should be given free hand to slaughter one and not the other.   In support of the proposition that one voluntarily accepting transportation as a gratuity is not, in a legal sense, a passenger, and that the railway company is not liable for

injuries not caused by its gross neglect, or not wilfully and wantonly inflicted, are rulings in Massachusetts, New York, Tennessee, Illinois, Maine, Connecticut, New Jersey, Washington, Wisconsin, Texas, and Indiana, as well as the Supreme Court of the United States.

The question here directly involved does not seem to have been made in this State. But in *Holly* v. *Southern Railway Co.,* 119 *Ga.* 767 (47 S. E. 188), the Supreme Court held that the plaintiff, who was riding upon a free pass, could not recover for the loss of her baggage; and it is so difficult to see how one riding on a free pass could recover for an injury to her *person,* due to negligence of a carrier, when for injury to or for loss of her *property,* due to such negligence, she can not recover, that it seems to us to be settled (upon the authority of the ruling in the *Holly* case) that a purely gratuitous passenger who accepts free transportation upon an agreement that he assumes all the risks of injury can not recover damages for an injury occasioned by the failure of the carrier to exercise extraordinary diligence. In the *Holly* case the Supreme Court held that "One who receives of a railroad company a gratuitous pass over its line, which by its terms is 'issued only on condition that the person accepting it assumes all risks of accidents, and expressly agrees that the company shall not be liable, under any circumstances, for any injury to the person, or loss or damage to the property of the person using it,' can not recover of the company the value of baggage lost while traveling on such pass." In the decision in the *Holly* case, too, the Supreme Court expressly distinguished that case from *Central Ry. Co.* v. *Lippman,* 110 *Ga.* 665 (36 S. E. 202, 50 L. R. A. 673), by saying that in the *Lippman* case "the relation of carrier and passenger existed between the defendant and the plaintiff in its full sense, while here there was no consideration whatever for the carriage." And quoting from *Muldoon* v. Seattle City Ry. Co., 7 Wash. 528 (35 Pac. 422, 22 L. R. A. 794, 38 Am. St. R. 901), the court says: "When the intending passenger proposes to the carrier that it do something for him which it is not, under any conceivable circumstance, required by law or duty to do, viz., to carry him, without any compensation whatever, and when the whole matter is at the option of either party to agree or not, it is difficult to see why the public should step in and deny the right of the carrier to limit its chances of

loss in the operation." As the Muldoon case, from which the Supreme Court approvingly quoted the above excerpt, was one of personal injuries, it would seem to be unquestionable that the same principle controls, whether the case be one of injury to person or one of injury to property.

Under the evidence in this case it was questionable whether the plaintiff was carried in consideration of the payment of her fare or upon a free pass. It was also questionable, even if she was carried upon a free pass, whether she had knowledge of the stipulation attached to her ticket, and assented to the condition relieving the railway company from liability. But in Boering v. Chesapeake Beach Railway Co., 193 U. S. 442 (24 Sup. Ct. 515, 48 L. ed. 742), the Supreme Court of the United States held that a stipulation in a free railway pass requiring the user to assume the risks of injury due to the carrier's negligence is binding on the person accepting the privilege, although notice of such stipulation may not have been brought home to her. And on the subject of notice the court said in that case: "She may not, through the intermediary of an agent, obtain a privilege—a mere license—and then plead that she did not know upon what conditions it was granted." The court quotes from Quimby v. Boston & Maine Railroad Co., 150 Mass. 365 (23 N. E. 205, 5 L. R. A. 846), the statement that "Having accepted the pass, he must have done so on the conditions fully expressed therein, whether he actually read them or not." In Marshall v. Nashville Ry. &c. Co., 118 Tenn. 254 (101 S. W. 419, 9 L. R. A. (N. S.) 1246, 12 Ann. Cas. 675), the Supreme Court of Tennessee reviews the various cases and holds that carriers will not be permitted to protect themselves against the consequences of their own negligence in the carriage of goods or passengers while they are common carriers, but they may become the carriers of goods gratuitously, and the law will then hold them liable only as mandatories; that is, only for losses occurring through gross negligence. As mandatories they are liable only for gross negligence; when compensated for the carriage they are common carriers, regardless of contract. This same doctrine, and the distinction growing out of the presence or absence of compensation, are forcibly stated in the decisions in Northern Pacific Railway Co. v. Adams, 192 U. S. 440 (24 Sup. Ct. 408, 48 L. ed. 513), and in Boering v. Chesapeake Beach Ry. Co., supra, which cite a large number of authorities and

treat the subject very elaborately.  See also, upon the right of a railway company to carry passengers gratuitously, and the consequent degree of liability attaching in such a case, Duncan *v.* Maine Central R. Co., 113 Fed. 508; Muldoon *v.* Seattle City Ry. Co., supra; Payne *v.* Terre Haute &c. Ry. Co., 157 Ind. 616 (62 N. E. 472, 56 L. R. A. 472) ; Griswold *v.* New York &c. R. Co., 53 Conn. 371 (4 Atl. 261, 55 Am. R. 115) ; Toledo Ry. *v.* Beggs, 85 Ill. 80 (28 Am. R. 613) ; Quimby *v.* Boston & Maine·R: Co., supra; Kinney *v.* Central Ry., 34 N. J. L. 513 (3 Am. R. 265); Willis *v.* N. Y. Central Railroad, 24 N. Y. 181; Perkins *v.* N. Y. Central Railroad, 24 N. Y. 196 (82 Am. D. 282) ; Marshall *v.* Nashville Ry. &c. Co., supra; Gulf Railway Co. *v.* McGowan, 65 Tex. 640; Annas *v.* Milwaukee &c. R. Co., 67 Wis. 46 (30 N. W. 282, 58 Am. R. 848) ; Rogers *v.* Kennebec S. Co., 86 Maine, 261 (29 Atl. 1069, 25 L. R. A. 491) ; Smith *v.* Atchison &c. R. Co., 194 Fed. 79 (114 C. C. A. 157).

As to the point that the passenger need not sign the contract of exemption, the cases of Wells *v.* New York Central Railroad, Boering *v.* Chesapeake Beach Ry. Co., Muldoon *v.* Seattle City Ry. Co., and Quimby *v.* Boston & Maine Railroad, supra, are in point.  The Civil Code provides that a carrier may by express contract relieve itself from liability: "A common carrier can not limit his legal liability by any notice given, either by publication or by entry on receipts given or tickets sold.  He may make an express contract, and will then be governed thereby." § 2726.  In the *Lippman* case, supra, Justice Little points out that the term "common carrier" applies only to carriers of freight, and that the term "carrier of passengers" should be applied to those who are engaged in that occupation.  In the present case the distinction is perhaps immaterial, because it is not generally borne in mind by those courts which have dealt with the question now before us.  In view of the ruling in the *Holly* case, supra, as well as the persuasive force of later rulings of the Supreme Court upon the kindred question, we think the rule should be that one who is riding without the payment of any compensation therefor is not entitled to recover damages for injuries when they are due to negligence less than gross negligence and when there is no admixture of wilfulness or wantonness.

However, we bear in mind that in the present case there is evidence which authorized the jury to find that if the plaintiff was in

fact riding upon a free pass, it had been given to her in accordance with the provisions of the Hepburn act, supra, as the wife of an employee of the defendant company. And in this aspect of the evidence it becomes necessary to inquire whether a member of a railway employee's family, though given nominally free transportation, would be entitled to recover for injuries inflicted upon her by the negligence of the company. We are of the opinion that the question is answered unequivocally in the affirmative by the express provisions of the Carmack amendment to the Hepburn act (34 Stat. 584-5), in which special provision is made for interstate free tickets, free passes, or free transportation for employees of common carriers and their families. The portion of the act to which we refer is as follows: "No common carrier, subject to the provisions of this act, shall after January 1, 1907, directly or indirectly issue or give any interstate free ticket, free pass, or free transportation for passengers, except to its employees and their families, its officers, agents, surgeons, physicians, attorneys at law," etc. (thereafter expressly designating other exceptions).

As was said by Mr. Justice Harlan in Louisville & Nashville Railroad Co. v. Mottley, 219 U. S. 467, 478-9 (31 Sup. Ct. 265, 55 L. ed. 297), in dealing with an attempt on the part of the defendants in error to enforce a contract guaranteeing them free passes during their lives, in consideration of the settlement of a claim for personal injuries, "Manifestly, from the face of the commerce act itself, Congress, before taking final action, considered the question as to what exceptions, if any, should be made in respect to the prohibition of free tickets, free passes and free transportation." It must be inferred, from a careful reading of that decision, that since the contract in that case, no matter how just, could not be enforced, because Congress, after due deliberation, had not excepted *existing contracts,* the same legislative power has, by means of a special exception, placed the right of employees and their families to accept free transportation in interstate carriage upon such grounds as not to subject it to attack as being contrary to public policy. We think it follows, too, that Congress, in considering the question of exceptions to the rule that all charges for transportation must be paid in money, as stated in that case, took also into consideration the fact that transportation might be given by the carrier, and accepted by employees, as partial pay-

ment for services rendered; and perhaps this was one reason why the exception was made. It is a matter of common knowledge that in many instances (as, at unimportant stations, where the services of physicians, surgeons, and attorneys at law are only infrequently required) the compensation of those employed consists principally, if not entirely, in free transportation for themselves and their families. Since Congress had under consideration the matter of exceptions, and had unlimited power to make any exception or to refuse to make it, and saw fit to except employees and their families, we think it is to be presumed that Congress had in mind the fact that free transportation for the employee and his dependent family would be such an item of value as would afford partial consideration for his services, and perhaps reduce the amount for which he would be willing to labor for the carrier. Certainly, under the ruling in Louisville & Nashville R. Co. *v.* Mottley, supra, there can be no question that Congress had the right to make the exception; and the language in which the exception is conferred is too plain to be misunderstood.

It may be admitted that the provisions of the act of Congress, supra, do not *require* interstate carriers to issue free transportation to their employees, nor place upon any carrier the *duty* of granting free transportation, either to employees or to any other class which Congress has made a matter of special exception, by permitting these carriers to grant free transportation to such persons only as are enumerated in the act. For reasons which Congress adjudged sufficient (as pointed out by Mr. Justice Harlan), carriers engaged in interstate transportation were given *permission* to issue free passes to employees and dependent members of their families, and upon the use of this privilege it placed no limitation inconsistent with the theory that as between employer and employee the monetary value of such transportation (even if used as a mere matter of pleasure to the members of the employee's family) might be taken into consideration as a part of the employee's compensation. The alleged free-pass contract was apparently made in the State of Georgia, and is to be construed by the law of this State. 6 Cyc. 580, and citations. And while we think that generally a stipulation in a free pass to the effect that the person who accepts such transportation shall himself assume all risk of injury is enforceable, and as to a passenger who has accepted free

transportation the carrier is liable only for injuries resulting from wantonness or wilful negligence, still an exception to this rule is presented in the provision of the Hepburn act which permits a railroad company to issue free transportation to its employees and members of their families; and as between such an employee and the railroad company which employs him, the privilege and benefit of being afforded transportation without cost may be regarded as a part of the consideration paid for the services of the employee, and as an element of value within the contemplation of both parties at the time the contract of employment was entered into; and therefore such a free pass can not be treated as necessarily a mere gratuity. In the absence of evidence to the effect that the alleged free pass now involved was not within the contemplation of the parties, and in view of the well-known custom, which was recognized by Congress as obtaining between carriers and their employees, we can not hold that the jury was not authorized to infer (if indeed they believed the plaintiff was riding upon a pass) that the grant of this privilege entered into the consideration of the contract of employment, and that the services of the husband supplied at least some such consideration for the transportation as made the plaintiff a passenger for hire.

As pointed out in several of the decisions to which we have referred, and also in some of the rulings of the Supreme Court of the United States which we have investigated, the extension of the privilege of sometimes riding upon the trains of the railway company by which they are employed is an item of value to employees and in a measure compensatory for their services. As heretofore stated, it enables such companies, perhaps, to obtain the services of their employees at a lower price than would otherwise be the case, and it may be presumed that it is mutually understood and agreed between employer and employee that a deduction be made on this account from the probable amount which would otherwise be paid for services. In a case in which this was shown to be true, it could not be said that the privilege of transportation, though nominally free, was gratuitous. And where the proof shows that it was expressly understood that free transportation should be furnished, or where it appears that the custom of furnishing its employees transportation on the part of the company is so uniform and universal as to reasonably raise the

inference that it will be extended to employees and their families generally, the fact that free transportation was furnished by the railway company should not preclude the right of recovery in case of injury being inflicted by the negligence of a railway company. Taking this latter principle into consideration, it can not be held that the trial judge erred in refusing to charge the jury as follows: "Plaintiff alleges that she was a passenger and had paid her fare, while the defendant contends that she had not paid such fare, but was traveling on a free pass. If you find, from the testimony, that she was traveling on a free pass, and that such pass contained a provision that the person accepting this free ticket agrees that the Charleston & Western Carolina Railway Company shall not be liable under any circumstances, whether from the negligence of agents or otherwise, for any injury to the person, or for any loss or damage to the property of the passenger using the same, then I charge you that she would not be entitled to recover for the injuries for which she sues." The charge requested was adjusted to the case of one riding upon a free pass without regard to her relationship to an employee of the railway company. It would have been a proper instruction if it had been qualified by the additional statement that if the jury found the plaintiff was not the wife of George Thompson, and was traveling on a free pass containing the stipulations mentioned, then she would not be entitled to recover. It was issuable whether she was George Thompson's wife, and the court correctly instructed the jury upon this point; but as the court could not undertake to determine the issue as to the marriage of George Thompson and Lizzie Thompson, the requested instruction which we have quoted above should have been so qualified as to have been applicable to the case in the event the jury should have found that these parties were legally married. The court did not err in refusing to charge the jury that "a stipulation in a free railway pass, requiring the user to assume all risk of injury due to the carrier's negligence, is binding on the person accepting the privilege, although notice of such stipulation may not have been brought home to him."

2. The court refused a request to charge the jury that "the testimony of a party who offers herself as a witness in her own behalf is to be considered most strongly against her, when it is self-contradictory, vague, or equivocal; and unless there be other

evidence tending to establish her right to recover, she is not entitled to a finding in her favor, if that version of the testimony most unfavorable to her shows that the verdict should be against her." It was not reversible error to refuse this request. One of the vital points in the case was whether the plaintiff was the wife of George Thompson. Unless she was his wife she could not, under the provisions of the Hepburn act, supra, have legally used the free pass. Unless she was his wife she would not have been entitled, as the user of a free pass, to recover for any injuries except those inflicted by gross negligence, or wilful and wanton negligence; and her testimony as to this point, as embodied in the record, may be construed to be self-contradictory, vague, and equivocal. Personally the writer, if he had been in the place of the trial judge, would have been strongly inclined to charge the jury as requested by counsel. But since a trial judge can never give instructions which tend to affect the weight of any testimony which has been introduced, except at the peril of using language which may violate the provisions of section 4863 of the Civil Code, we can not hold that the trial judge in the present instance erred in leaving the jury free to determine for themselves, in the first place, whether the testimony of any witness was contradictory, vague, or equivocal, and in the next place how they would consider such testimony, and what weight they would attach thereto. The applicability of the rule of evidence which the defendant sought to have presented to the jury is a matter necessarily addressed to the sound legal discretion of the trial court in any case where reference to the rule would seem to be proper, and the exercise of this discretion by the trial judge should not be controlled except when there has been a manifest abuse of discretion. Evil is more apt to result from exercising the discretion by giving instructions which may tend to depreciate certain testimony than by withholding such instructions in the exercise of the same discretion.

3. In a second amendment to its motion for a new trial the defendant presented testimony to show that the plaintiff's marriage to her alleged husband was void because she was a party to a previous marriage contract undissolved. It appears that the information of the defendant as to this point was not acquired until during the trial of the companion case of her alleged husband, George Thomp-

son, against the defendant, which occurred after the trial of this case; so that there does not appear to have been any lack of ordinary diligence. Testimony that the plaintiff was not the wife of George Thompson was of such importance as likely to produce a different result upon another investigation, if such testimony was credible to the jury; but the trial judge, in overruling this ground of the motion for a new trial, was amply supported by the rulings of the Supreme Court in *Jenkins* v. *Jenkins,* 83 *Ga.* 283 (9 S. E. 541, 20 Am. St. R. 316), *Norman* v. *Goode,* 113 *Ga.* 121 (38 S. E. 317), *Sellers* v. *Page,* 127 *Ga.* 633 (56 S. E. 1011), and *Drawdy* v. *Hesters,* 130 *Ga.* 161 (60 S. E. 451, 15 L. R. A. (N. S.) 190). As ruled by Chief Justice Bleckley in *Jenkins* v. *Jenkins,* supra, the issue presented by this ground of the amended motion for a new trial was one of fact for determination by the judge, and "the true doctrine of the authorities is, that where two alleged marriages compete, and one of them is proved as a fact, whether by direct or circumstantial evidence, the other can not be left to stand upon the mere legal presumption founded on cohabitation and repute. . . With no competing actual marriage proved, the law presumes marriage from cohabitation and repute. But this presumption the law declines to raise in opposition to a competing marriage actually proved." The testimony for the movant established a presumption of marriage, the testimony for the respondent established an actual marriage. Under the rulings above referred to, the court did not err in adjudging that the marriage proved by circumstantial evidence was inferior to the marriage established by direct proof.

4. The evidence authorized the verdict, and there was no error in refusing a new trial.                    *Judgment affirmed.*

NOTE: A writ of error from the Supreme Court of the United States was granted in this case.